RONALD JONES *et al.*, Plaintiffs-Appellees, v. CONSOLIDATION COAL
COMPANY, Defendant-Appellant.

Fifth District No. 5—87—0256

Opinion filed August 31, 1988.

William C. DeMoss and Don Johnson, both of Hohlt, House, DeMoss & Johnson, of Pinckneyville, for appellant.

Randall W. Kelley, of Sterling, Stanley & Kelley, P.C., of Fairview Heights, for appellees.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, Consolidation Coal Company, appeals from a judgment of the circuit court of Randolph County awarding $14,850 in compensatory damages to plaintiffs, Ronald and Shirley Jones, for property damage plaintiffs incurred as a result of defendant's blasting operations.

At trial, plaintiffs, Ronald and Shirley Jones, testified that they bought their home, outbuildings, and 20 acres near Sparta, Illinois, from Shirley's mother over 20 years ago. They paid $17,000 for the two-story house, a barn, two machine sheds, two small sheds, and the acreage. Plaintiffs remodeled and added to the house after they purchased it.

They experienced no damage to their home prior to 1978. In the early summer and fall of 1978, defendant conducted blasting operations at its Burning Star No. 3 Mine, approximately one-fourth mile

from plaintiffs' residence. Plaintiffs testified that they felt strong vibrations from the periodic blasting at the mine. They began to notice damage to their residence and outbuildings after the blasting. The damage included: cracking plaster and fireplace, separation of paneling and a kitchen counter top from the wall, sagging kitchen floor, and water damage. In addition, they noticed cracking in the concrete floors of their garage and barn. Plaintiffs contacted defendant and their insurance agent about the damage. They asked Roy McKinley, a local contractor, to give them an estimate of the cost of repair. Plaintiffs effected some repairs to their residence prior to trial.

Clarence Clasen, plaintiffs' insurance agent, testified that he had been in plaintiffs' residence several times between 1971 and 1978. Prior to 1978, he did not notice significant cracking or water damage. He visited the Jones residence during or shortly after 1978 and observed cracking at various locations throughout the home and separation of the kitchen cabinet from the wall. He also noticed cracking of the masonry in a milkhouse attached to plaintiffs' barn.

Plaintiffs' neighbor, Larry Phelps, testified that he had been to plaintiffs' residence prior to and after the damage to the residence. He observed no damage prior to 1978; however, after 1978 he noticed cracking plaster and separation of the kitchen cabinet from the wall.

Clarence Welty testified that he lived approximately 2½ miles east of plaintiffs' house. During the summer of 1978, he felt vibrations from the blasts at defendant's mine and noticed cracks forming in his house.

Roy McKinley, a retired carpenter, testified that he had bid hundreds of repair jobs during the period of time that he worked as an independent contractor. In November of 1978, he gave plaintiffs an itemized estimate (plaintiffs' exhibit No. 2) of the cost of repair work for their residence. The written estimate of $16,350 was later admitted as evidence and included $4,500 for tearing up the cracked concrete floor in plaintiffs' garage and replacing it with a new floor. McKinley acknowledged that the cost of replacing the floor was "expensive" and that he had, in the past, used caulk to fill cracks in "outside concrete." He stated that a car could probably be parked on the concrete, but driving a car in and out of a garage with a cracked floor would eventually result in more extensive cracking. McKinley stated that the concrete would eventually "break up" and it would have to be replaced.

Raymond Taucher, an administrative assistant for defendant in 1978, testified that he inspected plaintiffs' home in 1978 when plaintiffs reported damage because of blasting. Taucher saw the damage,

but he did not believe it was the result of blasting. Taucher testified that, at its closest point, the defendant's mining operation was 2,000 feet from plaintiffs' residence. Taucher also described the blasting procedures employed by defendant.

Thomas Rheinecker, a farmer, auctioneer, and realtor with some construction experience, testified that plaintiffs' damage was caused by faulty construction methods or environmental factors other than blasting. Rheinecker valued the plaintiffs' residence at $17,000 to $20,000. Rheinecker stated that his appraisal included 1½ acres around the house and the outbuildings. He testified that the outbuildings added nothing to the value of the property because they were obsolete. In Rheinecker's opinion, the proposed repairs would, at most, increase the value of the property $3,000 or $4,000.

Dennis Clark, an employee of VME-Nitro Consult, Inc., a consulting-engineering firm dealing with vibration and structural response due to ground and atmospheric vibration, testified regarding the effects of blasting upon the ground and surrounding structures. Clark stated that "peak particle velocity" (PPV) represents a standard formula for measuring the intensity of ground vibration and movement due to blasting. A ripple effect occurs, so that soil particles are actually displaced. Clark cited studies for the proposition that, as PPV approaches two inches per second, there is a 6% probability of failure in dry wall and plaster. According to defendant's records, PPV never rose above 1.1 during the relevant time frame. At the time, government regulations required restriction of PPV readings to under 2.0. The regulation has since been changed to 1.0. Clark inspected the damage to plaintiffs' property and concluded that it could not have been caused by blasting. In his opinion, the damages were caused by construction defects, natural causes, and aging.

Following closing arguments, the court took the matter under advisement, and subsequently awarded plaintiffs $14,850. From this judgment defendant appeals, claiming (1) that the court erred in awarding damages based on estimates of the cost of repair where repairs were made and no evidence of actual cost of repair was introduced; (2) that the cost of removing and replacing plaintiffs' cracked concrete garage floor entails an unreasonable destruction of the structure and results in cost to defendant disproportionate to the benefit to plaintiffs; and (3) that the judgment was against the manifest weight of the evidence. We affirm the judgment of the circuit court.

In support of defendant's first argument, it invokes the best evidence rule, arguing that a paid repair bill should have been required as the preferred method of proving plaintiffs' monetary damages.

Defendant charges that plaintiffs are guilty of "suppressing primary evidence."

■ As a preliminary matter, we note that only some of the damages plaintiffs sustained were actually repaired prior to trial. Obviously, only estimates could be supplied for damages that were not repaired. As for those items that were repaired, no testimony was presented by either side as to who effected the repairs or whether a repair bill even existed. If a repair bill did exist, defendant failed to establish that fact in cross-examination. Since defendant is unable to point to facts in the record indicating that a repair bill did exist, it cannot support its claim that one should have been produced, even assuming the applicability of the rule.

Moreover, the best evidence rule simply does not apply in this context. The "best evidence rule," or more aptly the "original writing rule," states a preference for the production of the original of a writing when the contents of the writing are sought to be proved. There is no general rule that a party must produce the best evidence that the nature of the case permits. (E. Cleary & M. Graham, Handbook of Illinois Evidence §1001.1, at 652 (4th ed. 1984).) The best evidence rule does not apply where a party seeks to prove a fact which has an existence independent of any writing, even though the fact might have been reduced to, or is evidenced by, a writing. *Continental Illinois Bank & Trust Co. v. Eastern Illinois Water Co.* (1975), 31 Ill. App. 3d 148, 334 N.E.2d 96.

Even if the facts in evidence and the law had supported defendant's argument, we would find the issue waived. Defendant must bear its share of the responsibility for the alleged error. This is also true of other alleged errors of which defendant complains. It was clear from Ronald Jones' testimony that an itemized estimate of the cost of repair had been prepared and that *some* repairs had been effected to the residence. Defendant objected, on hearsay grounds, to Jones' testimony regarding the estimate. Thereafter, Roy McKinley testified extensively regarding his estimate of the cost of repairs, without objection by defendant. The written estimate McKinley had prepared (plaintiffs' exhibit No. 2) was admitted into evidence without objection. Only in closing argument did defendant even make reference to plaintiffs' failure to provide evidence of the actual cost of repairs.

■ Defendant's objection to the evidence in closing argument was untimely. An objection to the admission of evidence, in order to be timely, must be made at the time of its admission. (*Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 439 N.E.2d 1284.) Defendant's remarks in closing argument were not

timely even if we considered them as objections. Moreover, defendant's "hearsay" objection to Jones' testimony was insufficient to preserve a "best evidence" issue for appeal. An objection to evidence based on a specific ground constitutes a waiver of objections on all grounds not so specified. (*Hargrove v. Neuner* (1985), 138 Ill. App. 3d 811, 485 N.E.2d 1355.) The purpose of this rule is to inform the trial court of the particular problem and to enable the party offering the testimony an opportunity to confront the objection. (*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628.) The hearsay objection waived any conceivable objection based on the best evidence rule. Furthermore, even if defendant's closing argument could be said to preserve the issue, defendant's failure to ask for a resolution of the issue at trial waived its consideration on appeal. *Keating v. Iozzo* (1987), 155 Ill. App. 3d 774, 508 N.E.2d 503.

 Even if this issue were preserved for appeal, defendant's failure to cite relevant authority has resulted in waiver on the appellate level. Defendant has cited no cases holding that estimates are inadequate or that evidence of repair costs must be presented where partial repairs have been effected. Defendant cites a case which holds that a paid repair bill is admissible as evidence of the cost of repairs; however, the case cited does not even arguably address the issue. It does not follow that, because a paid repair bill is admissible, the bill is required. Estimates of the cost of repair are acceptable evidence of damages incurred. (*J-M Builders & Supplies Corp. v. McIntyre* (1978), 56 Ill. App. 3d 714, 372 N.E.2d 420.) Defendant's failure to cite authority in support of its position waives its contention. Citation to irrelevant authority fails to comply with Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)). See *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.

 Defendant's second contention is that the court erred in awarding plaintiffs a sum equivalent to the cost of removing and replacing their cracked concrete garage floor. Defendant argues that removal and replacement constitutes an unreasonable destruction of the structure and results in costs to defendant disproportionate to the benefit plaintiffs receive. Defendant submits that the appropriate measure of damages is the diminution in value attributable to the damage.

Plaintiffs respond that defendant waived the right to object on appeal to allowance of costs of repair where it failed to present evidence at trial of the diminution in value of the garage. Plaintiffs argue that there was no evidence that the cost of repair was greater than the diminution in value to the property.

Defendant, in its reply brief, argues that there was evidence in the record to show that the diminution in market value of the cracked garage floor was less than the cost of repairing the floor and therefore contends that measure of damages should be adopted. Defendant points to the testimony of Thomas Rheinecker. Rheinecker testified that the plaintiffs' outbuildings, including the garage, did not add any value to the property because of their obsolescence. Defendant argues that there could be no decrease in value because the outbuildings were worth nothing, hence the decrease in value was less than the cost of repair. Defendant carries his argument further, noting Rheinecker's testimony that effecting the repairs plaintiffs sought would only increase the value of the property $3,000 to $4,000. Defendant contends that "[t]he evidence as to the decrease in the fair market value of all the improvements on plaintiffs' land was uncontradicted."

We reject Rheinecker's testimony regarding the value of the outbuildings as inherently improbable and unworthy of belief. Defendant presented no credible testimony to demonstrate that the diminution in value was less than the cost of repair, even assuming that the lesser of the two would be the appropriate measure of damages. There are instances where a reviewing court can consider the credibility of witnesses. (See *People v. Bierman* (1987), 163 Ill. App. 3d 256, 516 N.E.2d 963.) This case presents such an instance. Rheinecker in effect testified that a barn, two machine sheds and two small sheds—one of them being the garage—had no value whatsoever. We find such a statement preposterous, beyond the limits of human belief and unworthy of belief, even though it was uncontradicted. The uncontradicted testimony of a witness must be taken as true unless it is impeached by other testimony or circumstances, or it is found to be inherently improbable. Testimony is inherently improbable if it is contrary to the laws of nature or universal human experience so as to be incredible and beyond the limits of human belief, or if the facts stated by the witness demonstrate the falsity of the testimony. (*Bucktown Partners v. Johnson* (1983), 119 Ill. App. 3d 346, 456 N.E.2d 703.) Since defendant presented no credible testimony on the diminution in value of the property, the court was justified in applying a cost of repair measure of damages.

Assuming *arguendo* that Rheinecker's testimony did address the diminution in value of the property and that it was credible, we still would hesitate to apply a formalistic diminution in value standard in this case. As observed in a recent Federal case applying Illinois law (*Williams-Bowman Rubber Co. v. Industrial Maintenance, Welding &*

*Machining Co.* (N.D. Ill. 1987), 677 F. Supp. 539), Illinois law is not entirely clear on when cost of repair or diminution in value measures of damage apply. After an extensive review of Illinois decisions, the court in *Williams-Bowman* stated its view of the applicable Illinois rule as follows:

> "If real property is partially injured, *and* the injury may be repaired in a practicable manner, then the proper measure of damages is the cost of restoring the property to its condition prior to the injury. If, however, the real property is totally destroyed or damaged in a manner which renders repair impracticable, then the diminution in value rule applies.
>
> * * *
>
> If an injury is capable of being repaired in a practicable fashion, then the injured party can be made whole through restoration and repair without punishing the liable party. If, on the other hand, the property is totally destroyed or may be repaired only in an impracticable manner, then it is impossible to put the injured party in the position he was in before the damage without penalizing the party responsible for causing the injury." (Emphasis in original.) (*Williams-Bowman*, 677 F. Supp. at 545-46.)

We do not share the Federal court's concern that the party responsible for causing the damage might be penalized; nor do we feel that the inequity that may result in applying the two measures of damage evaluation should fall on the injured party. While we appreciate the court's reluctance to sanction an excessive cost of repair award which might result in economic waste in a commercial setting, we are not convinced that an injured homeowner should be relegated to a diminution in value standard where his structures are damaged.

In *Myers v. Arnold* (1980), 83 Ill. App. 3d 1, 403 N.E.2d 316, the court noted that the diminution in value rule may be inadequate and unfair in some instances. The court stated:

> "Allowing a plaintiff to recover the lesser of the cost of repair or the diminution in market value may be appropriate where the interest which has been harmed is purely financial, as where the land was purchased as a business investment with an eye towards speculation or where it is held solely for production of income. However, the same measure of damages may be painfully inadequate when the land is held for a personal use such as a family residence and the harm may be corrected with a reasonable expenditure even though the expenditure exceeds the amount the land has diminished in value. In the latter case,

the full repair cost will come much closer to restoring what was actually lost and will not require the injured party to correct the harm with funds from his own pocket." *Myers*, 83 Ill. App. 3d at 7, 403 N.E.2d at 321.

The Restatement (Second) of Torts would go even further. The comments to section 929 indicate that

"if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion." (Restatement (Second) of Torts §929, comment *b* (1979).)

We believe the Restatement represents the better view and would, if called upon to decide the instant case on this issue, hold that, under the facts of this case, plaintiffs would be entitled to the costs of repair even though the cost involved may have exceeded the diminution in value standard by a substantial amount.

■ Defendant's final contention is that the circuit court's judgment was against the manifest weight of the evidence. Defendant claims, in its opening brief, that there was no evidence to establish a causal connection between the blasting and plaintiffs' injury. In its reply brief, defendant modifies its position somewhat, claiming that lay testimony as to "temporal coincidence" of the blasting and the damage is insufficient to establish proximate cause in view of defendant's expert testimony.

The plaintiffs testified that the damages complained of became evident during the period of defendant's blasting near their home. Plaintiffs' insurance agent testified that he had been in plaintiffs' home several times prior to 1978 and had not seen any evidence of damage. In 1978 he inspected the home at plaintiffs' request and saw damage to the structure. Plaintiffs' neighbor, Clarence Welty, testified that he lived approximately 2½ miles from plaintiffs and he too felt vibrations from defendant's blasting operations and noticed cracks forming in his house.

Defendant presented Thomas Rheinecker, Raymond Taucher, and Dennis Clark as witnesses. They determined that the damage to plaintiffs' residence was not the result of blasting. Clark, an expert in the field of ground vibration and structural response, testified that the vibrations from defendant's blasting operations could not have reached

an intensity sufficient to damage plaintiffs' residence.

We note that the testimony of an expert must be judged by the same rules of weight and credibility applicable to other witnesses. (*Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 388 N.E.2d 844.) We attach no particular significance to the fact that defendant produced an expert witness while plaintiffs presented only lay witnesses. As for defendant's claim that mere "temporal proximity" of blasting and damage is insufficient to establish a cause and effect relationship, we find this argument to be without merit given the evidence presented in this case.

In *Arras v. Columbia Quarry Co.* (1977), 52 Ill. App. 3d 560, 367 N.E.2d 580, this court held evidence similar to that in the case at bar relevant and admissible to establish a cause and effect relationship. In *Arras*, plaintiffs' neighbor, Anna Dugar, testified that the water in her well disappeared after the explosion in defendant's quarry, just as water in plaintiffs' well had disappeared. This court held that the alleged effect of the same blast on other wells in the vicinity would be admissible. The only relevancy the Dugan testimony had was to prove that defendant's blasting damaged plaintiffs' well. As in *Arras*, Clarence Welty testified that he experienced cracking in his home during the period of blasting, just as cracks had formed in plaintiffs' home. We hold that the lay testimony presented by the plaintiffs was sufficient to establish a causal connection between the blasting and the damage to plaintiffs' residence. This court cannot substitute its opinion for the finding of the trier of fact unless its holding is against the manifest weight of the evidence. (*Scheduling Corp. of America v. Massello* (1987), 151 Ill. App. 3d 565, 503 N.E.2d 806.) We cannot say that an opposite conclusion is clearly evident in the case at bar.

For the foregoing reasons, the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

KARNS and WELCH, JJ., concur.