ROBERT TOMLINSON *et al.*, Plaintiffs-Appellees, v. DARTMOOR CONSTRUCTION CORPORATION, Defendant-Appellant.

First District (5th Division)   No. 1—92—2785

Opinion filed December 16, 1994.

David M. Levin and David W. Groundwater, both of Chicago, for appellant.

David A. Axelrod and Mark D. Wetterquist, both of Chicago, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

In March 1986, plaintiffs, Robert Tomlinson and Lori Tomlinson, entered into a contract with defendant, Dartmoor Construction Corporation, for defendant to construct and sell a house to plaintiffs. On October 11, 1989, plaintiffs filed an action against defendant to recover for alleged defects in the house under a warranty and for attorney fees pursuant to a rider to the contract. At trial, plaintiffs sought to prove the existence of defects in the house and that, pursuant to the warranty and the rider, defendant was obligated to reimburse plaintiffs for taking steps to correct the defects. The trial court entered a judgment in favor of plaintiffs and awarded plaintiffs damages in the amount of $5,897 and attorney fees in the amount of $11,143.85. On appeal, defendant contends that the trial court erred in: (1) determining that plaintiffs successfully carried their burden of proving a defect without producing expert testimony on the issue of a

defect; (2) permitting plaintiffs to proceed on issues not pled in the complaint; (3) determining that plaintiffs are entitled to an award of attorney fees for work done on issues upon which plaintiffs did not prevail; and (4) determining that plaintiffs successfully carried their burden of proof that they are entitled to reasonable attorney fees.

We affirm.

BACKGROUND

In pertinent part, the warranty provided for the following:

"DARTMOOR CONSTRUCTION CORP. warrants the dwelling constructed by DARTMOOR CONSTRUCTION CORP. on the above described block and lot (the 'Dwelling') against defects in the original material and workmanship for one (1) full year from the date of the closing of the purchase of the Dwelling or the date of occupancy by you, whichever occurs first (the 'Warranty Period') subject to the terms and provisions of this Warranty.

DARTMOOR CONSTRUCTION CORP. will repair or replace, at its option, and at no charge, any component of the Dwelling which shall be found to be defective. All claims for correction of defects must be made within the Warranty Period by written notice addressed and mailed to DARTMOOR CONSTRUCTION CORP., to the attention of the 'Customer Service Department'."

In addition, paragraph 12 of the rider to the contract states the following:

"12. The Seller shall be obligated to fully perform all of its obligations hereunder on or prior to Closing. In the event that the Seller has not fully performed all of the obligations hereunder prior to the Closing and the Purchaser elects to close this transaction, the Seller agrees that if all obligations of the Seller hereunder are not completed within 30 days after the Closing, *** the Buyer may complete such obligations of the Seller and the Seller agrees to reimburse the Buyer for the reasonable costs incurred by the Buyer in completing the Seller's obligations. If the Seller does not pay such costs to Buyer within 30 days of receipt of written notice of such costs, then the Seller agrees to pay any and all additional costs and expenses, including reasonable attorneys' fees incurred by the Buyer in collecting the amounts which the Seller has agreed to pay under this Paragraph."

Before taking possession of the house, both plaintiffs and a representative of defendant walked through the house at which time plaintiffs identified several defects in the house. At that time, defendant prepared a list of those and indicated that it would correct the defects. Plaintiffs took possession of the house in November 1986.

After taking possession of the house, plaintiffs discovered several

additional defects in the house. Plaintiff Lori Tomlinson testified that the wooden floor in the study had a board that had a different shading than the other boards in the floor, air would enter the house through the kitchen because there was a gap between the molding and the frame of the kitchen sliding glass door, the screen to the kitchen sliding glass door continually fell off, water seeped through the wall and went down into the basement, rain leaked through the living room bay windows so that puddles would form on the living room floor, there was molding on the interior of the house that was chalky white, the exterior paint was chipping off and was exposing the bare wood, water leaked into two of the bathrooms, the floor tile in the children's bathroom began to come away and was spongy, stones in the fireplace were loose and would easily come off when lifted, the Jenn-Air range could not be used because the smoke vented into the basement rather than outside the house, the exterior bricks were not secure, and the front door was chipping. She also testified that she contacted defendant as these problems occurred and that defendant attempted to repair many of the defects, but was unable to do so.

After defendant failed to repair certain defects, plaintiffs advised defendant that they would hire their own contractor to work on those areas of the house with which they were dissatisfied. These areas included sealing windows, replacing the kitchen sliding door, repairing the bay window installation, repairing fireplace bricks, and sealing the foundation to protect against leaks in the basement.

Plaintiff Robert Tomlinson testified that he sent several letters to defendant regarding the defects. In his letter to defendant dated October 5, 1987, he identified the following defects: wood under the bay window needed repair, nail in the staircase, screen coming off one Prado door, "sheet good" in laundry room coming away from door, crack in wooden floor, paint on exterior, dent in the Prado door, weather stripping coming off one greenhouse window, cracked ceramic tiles, shelf missing in kitchen, family room ceiling crack, fireplace still smokes, exterior moldings, hairline crack in bathroom toilet, basement leaking in two spots, molding in master bedroom cracked, stress cracks in all corners of tray ceiling, wrong size grid on sitting room door, crack in marble in the master bathroom, and cracked cap in powder room toilet. In a letter to defendant dated February 24, 1988, he identified the following additional defects: study floor, exterior paint, cedar bleeding, garage, front door, ceramic tile, fireplace, interior and exterior sliding door, woodwork not varnished, and basement leak. Plaintiff Robert Tomlinson also wrote three subsequent letters to defendant wherein he expressed his dissatisfaction with defendant's inability to correct the defects. In these

letters, he notified defendant of plaintiffs' intent to have the defects repaired by other contractors and that they would bill defendant for the repairs. Thereafter, one of defendant's employees, Pat Taylor, authorized plaintiffs to employ other companies to repair the defects in the house.

Michael Gibson testified that he was engaged in construction since 1971 and was currently doing business as GBS Construction in South Barrington, Illinois. He visited the house during the fall of 1990 and observed water leaking into the foundation because it extended past the exterior wall, loose stones on the northeast corner of the house, and loose stones in the fireplace. Mr. Gibson testified that he recommended that plywood be placed around the bay windows, that three pieces of copper flashing be constructed to cover the brick windowsills, and the repair of certain loose bricks in the northeast corner of the house. He also testified that he provided plaintiffs with an estimate for the replacement of the oak flooring in the den, drywall patching, tile replacement, and replacement of certain subflooring and that he recommended "Superior Heating" to plaintiffs and that "Superior Heating" installed copper flashing on the exterior front windows to prevent water leakage.

Mr. Gibson testified that he did not inspect the house prior to the fall of 1990 and that when he inspected the house, the patio window had already been replaced. He also testified that he had not completed any of the work included in his proposal.

Jack Roder, Jr., director of construction for defendant, testified that he was familiar with plaintiffs and their complaints regarding their home. He testified that in November 1986, and on several other occasions during 1987, he sent the flooring contractor, Vincy Floor, to replace two separate planks to the oak flooring that had apparently cracked, but that plaintiff Lori Tomlinson complained that the grain of the replacement planks did not match the preexisting planks in the flooring. He had the painting contractor, M. Ecker & Company, complete various exterior painting, but plaintiffs were not satisfied with the exterior painting because they believed that the cedar wood was bleeding through the paint. He also called a carpenter to adjust the patio door, but plaintiff Lori Tomlinson replaced the patio door with a Pella door, which was significantly more expensive than the patio door installed by defendant. He also testified that defendant had a contractor caulk the area around the bay windows for the purpose of correcting the leak through the bay windows. He testified that he did not have any personal knowledge regarding any work that was performed by any of the subcontractors sent by defendant to plaintiffs' home because he was not present when any such work was done and never personally inspected the defects himself.

Following closing arguments, the trial court entered a judgment in favor of plaintiffs in the amount of $5,897, allocated as follows: (1) $1,757 for the replacement of the patio doors; (2) $840 for foundation repair; (3) $600 for window caulking; (4) $100 for fireplace repair; and (5) $2,600 for bay window repair and copper flashing. Plaintiffs were also subsequently awarded attorney fees, pursuant to a fee-shifting provision contained within the parties' written agreement, in the amount of $11,143.85.

OPINION

I

Initially, defendant contends that the trial court erred in determining that plaintiffs successfully established defendant's liability for breach of contract. Defendant argues that since plaintiffs failed to present expert testimony sufficient to establish the existence of any defect in the construction of the house that arose within the warranty period that was not satisfactorily remedied by defendant, plaintiffs failed to carry their burden of proof at trial on the issue of a defect. Defendant points out that Roder testified that he called in subcontractors to remedy all of the claimed deficiencies in the house which were brought to his attention by plaintiffs, and believed that if any deficiencies existed, the appropriate repair or replacement of any items which did not meet generally accepted standards was effected and that eventually he was denied access by plaintiffs for making appropriate repairs, precluding defendant from any further performance of the warranty. Defendant also asserts that Roder's testimony that any defects that existed in the house during the warranty period were satisfactorily repaired was uncontradicted by anyone qualified to testify that the dwelling built by defendant did not measure up to generally accepted standards of workmanship. Defendant maintains that, even if the trial court, as trier of fact, disbelieved Roder's testimony, no verdict for plaintiffs may stand because plaintiffs' dissatisfaction alone may not establish the existence of any defect in the construction of the house and, in the absence of any expert testimony of any alleged defects, plaintiffs failed to carry their burden of proof.

Our resolution of the parties' dispute in the present case turns on whether the manifest weight of the evidence supports the trial court's decision. (See *Wilmette Partners v. Hamel* (1992), 230 Ill. App. 3d 248, 256, 594 N.E.2d 1177.) For the trial court's judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. (See *Hamel*, 230 Ill. App. 3d at 256.) A reviewing court may not reverse the trial court's judgment merely because

different conclusions could be drawn or because the reviewing court disagrees, so long as there is evidence to support the trial court's judgment. (See *Hamel*, 230 Ill. App. 3d at 256.) For the reasons that follow, we hold that the decision of the trial court in the case *sub judice* is supported by the evidence.

Defendant relies on *Ryan v. E.A.I. Construction Corp.* (1987), 158 Ill. App. 3d 449, 461, 511 N.E.2d 1244, for the proposition that the failure of plaintiffs to produce expert testimony at trial on the issue of a defect is fatal to plaintiffs' claim. We conclude, however, that defendant's reliance on *Ryan* for this proposition is misplaced because nowhere in *Ryan* did this court posit that expert testimony is *required* in order for a plaintiff to carry its burden of proof in any type of civil litigation and, specifically, in a breach of contract claim for the failure to repair defects. In particular, in *Ryan*, this court explained that Illinois courts *prefer* the use of expert testimony when it would aid the fact finder in its understanding of evidence:

> "Illinois *favors* the permissive use of expert testimony in all types of cases where the jury would be aided in its understanding of the facts. [Citation.] ***
>
> Moreover, in Illinois, a contractor, builder or other qualified person *may* give expert opinion testimony on subjects in the field of construction or matters which relate to the construction, installation, maintenance, use, or repair of structures, buildings and the like. Expert testimony in this field covers such things as proper mode of doing construction work, conformity with plans and specifications, adequacy of safeguards and many others. [Citation.]"

(Emphasis added.) (*Ryan*, 158 Ill. App. 3d at 461.) In *Ryan*, this court held that expert testimony that industry standards for cutting into a clay wall are incorporated by reference into the Chicago building code was permissible to aid the fact finder in its understanding of the facts. See *Ryan*, 158 Ill. App. 3d at 461-62.

However, in *Jones v. Consolidation Coal Co.* (1988), 174 Ill. App. 3d 38, 528 N.E.2d 33, plaintiffs brought a civil suit against the defendant to recover for damage to property. In presenting their case, plaintiffs testified that the damages complained of became evident during the period of defendant's blasting near their home, a neighbor testified that he also felt vibrations from defendant's operations and noticed damage to his home, and plaintiffs' insurance agent testified that even though prior to defendant's blasting operations he had not seen any evidence of damage to plaintiffs' home, he did see damage to the structure when he inspected it at a point after defendant began its operation. (See *Jones*, 174 Ill. App. 3d at 46.) The defendant in *Jones*, however, presented an expert in the field of ground vibration

and structural response who testified that the vibrations from defendant's blasting operations could not have reached an intensity sufficient to damage plaintiffs' residence. (See *Jones*, 174 Ill. App. 3d at 46-47.) In holding that the plaintiffs' evidence was sufficient to sustain their burden of proof on the issue of proximate cause, the court made the following comments with regard to the defendant's assertion that lay testimony alone is insufficient to sustain plaintiffs' burden on that issue in view of defendant's expert testimony:

> "We note that the testimony of an expert must be judged by the same rules of weight and credibility applicable to other witnesses. [Citation.] We attach no particular significance to the fact that defendant produced an expert witness while plaintiffs presented only lay witnesses." *Jones*, 174 Ill. App. 3d at 47.

In the present case, plaintiffs testified that there were numerous defects in their house during the period of the warranty of which they apprised defendant including, among other things, water leaks, doors that did not close, and floor boards that did not match. In addition, plaintiff Robert Tomlinson's letters which had been written to defendant regarding complaints about the construction defects in the house were introduced into evidence. Mr. Gibson testified that when he examined plaintiffs' home in the fall of 1990 he observed water leaking into the foundation and that, in his opinion, the leak was caused by the foundation extending past the exterior walls in certain areas of the home and that he examined the fireplace and observed loose stones in the fireplace mantle.

■ While it is true that, where appropriate, a party may present expert testimony, and that, in some instances, such testimony is preferred (see *Ryan*, 158 Ill. App. 3d at 461), plaintiffs' failure to present an expert witness is not fatal to their claim given the evidence presented in this case (see *Jones*, 174 Ill. App. 3d at 47). The trial court correctly determined that plaintiffs successfully carried their burden of proving that deficiencies in their home existed which defendant was obligated to repair or to reimburse plaintiffs for taking steps to repair.

## II

Next, defendant contends that the trial court erred in permitting testimony and awarding damages to plaintiffs based on defects which were not specifically pled in the complaint. Defendant points out that, in pertinent part, plaintiffs' complaint alleges the following:

> "5. After Buyers moved into their home, they became aware that there were defects or unfinished construction on the home, including the following:

a) the windows and exterior doors were not properly sealed and painted;

b) the floor of the study was not properly installed and stained;

c) the ceiling drywall sustained water damage;

d) the kitchen sliding glass door was not properly sustained [sic] and varnished;

e) the bay windows on the front elevation were not properly installed; and

f) the patio door was not properly installed."

Defendant maintains that even though the trial court made specific findings regarding whether plaintiffs were entitled to recovery based on evidence the court heard with respect to these alleged defects, the trial court erroneously (1) permitted testimony and (2) awarded damages as to a number of defects which were not alleged in the complaint and, in particular, the trial court erred in permitting the testimony of Mr. Gibson as to defects in the foundation of the house and in awarding plaintiffs damages in the amount of $840. Defendant also claims that the trial court erred in allowing Mr. Gibson's testimony as to loose fireplace bricks and in awarding plaintiffs damages in the amount of $100. Defendant posits that since, in contract cases, a variance between the pleadings and the proof can preclude recovery if that variance is prejudicial (see *Berg & Associates, Inc. v. Nelson Steel & Wire Co.* (1991), 221 Ill. App. 3d 526, 534, 580 N.E.2d 1198), and that, in the present case, "[d]efendant was unaware that [p]laintiff[s] intended to proceed on these unpled defects and was clearly prejudiced by allowing these new issues to be raised," defendant is entitled to a new trial.

It is true that since the issues in a case are created by allegations in the pleadings, to which the proof must correspond, a party cannot have relief based on proof without allegations. (See *Berg & Associates, Inc.*, 221 Ill. App. 3d at 534.) However, for a variance between allegations and proof to constitute reversible error, the variance must be shown to be material. (See *Berg & Associates, Inc.*, 221 Ill. App. 3d at 534.) The rule in Illinois is that no variance shall be deemed material unless the adverse party can show that he was misled by the variance to his prejudice. (See *Berg & Associates, Inc.*, 221 Ill. App. 3d at 534; *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 296, 408 N.E.2d 1014.) For the reasons that follow, we hold that, in the case at bar, defendant was not prejudiced by any variance between the specific defects alleged in the complaint and the introduction of evidence of other defects.

In *Berg & Associates, Inc.*, plaintiff sued defendant for breach of a written contract and was permitted to introduce proof that related to

extra work it performed under the contract. (See *Berg & Associates, Inc.*, 221 Ill. App. 3d at 533-34.) This court held that defendant suffered no prejudice as a result of the trial court's allowance of this evidence because, at the time the complaint was filed, plaintiff had attached as exhibits to the complaint a copy of the written contract and copies of the alleged unpaid bills and, as a result, defendant was sufficiently notified before trial that plaintiff was suing on the terms of the written contract. See *Berg & Associates, Inc.*, 221 Ill. App. 3d at 534-35.

■ Similarly, in the present case, defendant had sufficient knowledge before trial that the basis of plaintiffs' lawsuit was to recover for, in addition to those defects specifically enumerated in the complaint, other defects as well. The record reveals that plaintiff Robert Tomlinson's correspondence with defendant, in one letter dated October 5, 1987, and another one dated February 24, 1988, listed all of the defects that were specifically identified in the complaint as well as numerous other defects, including an indication that the basement was leaking in two areas and that there were defects in the fireplace, and, in subsequent letters sent before the complaint was filed, plaintiff Robert Tomlinson notified defendant of plaintiffs' intent to have the defects repaired by other contractors and bill defendant for the repairs.

Moreover, during discovery, in a response to one of defendant's interrogatories, filed on September 21, 1990, plaintiffs indicated that, on or about the date of closing, the basement was leaking via the back foundation and water was running down the inside of the basement wall during rainstorms, and that plaintiffs notified defendant of the problem within one month of closing. In addition, the response indicated that even though Mr. Roder caulked the back foundation, the leaking continued and defendant made no further attempt to repair the leaking and that, as a result, the plaintiffs engaged Midwest Waterproofing to attempt to repair the leaking. In another response to an interrogatory, dated October 3, 1990, plaintiffs indicated that, at trial, they expected to call Mr. Gibson, a general contractor, as an expert witness who would testify as to the reasonableness of plaintiffs' expenditures to repair the defects that had been identified as of that date and that plaintiffs expected Mr. Gibson to give estimates as to the cost of repair of all other defects as well as the unfinished construction in plaintiffs' home. Thus, as in *Berg & Associates, Inc.*, defendant had sufficient knowledge of the basis of plaintiffs' lawsuit prior to trial and, as such, we do not find that a material variance existed between the pleadings and the proof in this case.

## III

The final issue that defendant raises for review is the trial court's award of attorney fees to plaintiffs. The focus of defendant's first claim in this regard is a fee-shifting provision contained within the parties' written agreement which was the basis of the trial court's award of attorney fees to plaintiffs. That provision provides, in pertinent part, as follows:

"10. In the event that a dispute arises hereunder, the *prevailing party* shall be entitled to receive from the *other* party any and all costs and expenses, including reasonable attorneys' fees, incurred by the *prevailing party* in connection with such dispute." (Emphasis added.)

Defendant contends that since the trial court did not award plaintiffs damages for all of the defects alleged by plaintiffs in the complaint, plaintiffs can only be considered the prevailing party with regard to those disputed issues for which they were awarded damages. Defendant argues that the trial court erroneously determined that plaintiffs were the prevailing party, under the fee-shifting provision, with respect to all disputed issues and that plaintiffs should only be allowed to recover attorney fees for those issues on which they prevailed. Defendant also maintains that the parties' contractual fee-shifting provision should be construed strictly against plaintiffs, in particular, because it was plaintiffs' attorneys that drafted the provision. See *Larkin v. Sanelli* (1991), 213 Ill. App. 3d 597, 603, 572 N.E.2d 1145.

With respect to defendant's position that plaintiffs can only recover attorney fees for those issues upon which they prevailed, we hold that plaintiffs were the sole prevailing party within the meaning of the fee-shifting provision. Contractual provisions for attorney fees must be strictly construed, and the court must determine the intention of the parties with respect to the payment of fees. (See *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.* (1992), 240 Ill. App. 3d 737, 753, 607 N.E.2d 1337.) In an action for breach of contract, a party is a "prevailing party" for the purposes of awarding attorney fees when a judgment is entered in his favor or when he obtains an affirmative recovery. (See *Grossinger Motorcorp, Inc.*, 240 Ill. App. 3d at 753.) In the present case, the trial court entered judgment in favor of plaintiffs and against defendant and ordered defendant to pay plaintiffs the amount of the judgment. As such, we conclude that plaintiffs were the sole prevailing party and are entitled to recover all costs and expenses, including reasonable attorney fees incurred by them in connection with this dispute. Moreover, if we were to accept defendant's approach, then the award of

damages to the losing party pursuant to a contractual fee-shifting provision such as the one in the case at bar would often be greater than the award to the party in whose favor the trial court entered judgment. We believe that the better approach is that, with respect to an award of attorney fees in civil cases pursuant to a contractual fee-shifting provision, there is only one prevailing party absent the parties' mutual consent to the contrary. This is so because, as a general rule, a party in whose favor the trial court enters judgment is usually considered the prevailing party at the trial level. See *Grossinger Motorcorp, Inc.*, 240 Ill. App. 3d at 753.

■ Relative to defendant's contention that it is entitled to attorney fees because it is a prevailing party under the contractual fee-shifting provision, we note that this argument is not properly before this court because the trial court was never asked whether defendant was entitled to an award of attorney fees. In Illinois, issues and arguments which were not presented to or considered by the trial court cannot be raised for the first time on appeal. (See *Warren v. Lemay* (1986), 144 Ill. App. 3d 107, 117, 494 N.E.2d 206; *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1052, 452 N.E.2d 804.) Although the trial court granted defendant leave to submit its petition for attorney fees, defendant failed to do so or to provide the trial court with any evidence in support of its claim for attorney fees. As a result, defendant has waived any consideration of this argument on appeal. See *Lemay*, 144 Ill. App. 3d at 117 (garnishee failed to preserve issue of attorney fees for appellate review because it failed to present the issue to the trial court in its cross-motion for summary judgment or in its trial brief).

Defendant further contends that, even if this court determines that the trial court's interpretation of the parties' contractual entitlement to attorney fees was correct, the trial court erred in determining that plaintiffs successfully carried their burden of proof that they are entitled to reasonable attorney fees. Defendant maintains that a fee petition, to be recoverable, must be based on admissible evidence and that, in the present case, the petitions for attorney fees submitted to the trial court by plaintiffs' attorneys were lacking in admissible facts or the detailed factual showing required by courts to show that any claimed fees were reasonable.

■ In Illinois, the party seeking attorney fees, whether for himself or on behalf of a client, always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to the reasonableness of the fees. (See *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 983, 518 N.E.2d 424.) The record reveals that plaintiffs' amended petition for attorney fees

requests attorney fees for the two law firms which represented plaintiffs in this case: (1) Keck, Mahin and Cate, which was initially retained by plaintiffs, but withdrew on February 6, 1991, and (2) David A. Axelrod and Associates, which filed its first appearance on behalf of plaintiffs on February 27, 1991. For each law firm, the petition specifies the services rendered that were the basis for each fee, the date on which the services were rendered, the attorney performing each service, the qualifications of every attorney performing each task, and the total amount due. In addition, at the request of defense counsel, the trial court conducted a hearing on the petition wherein defendant was afforded the opportunity to question plaintiffs' attorneys. After consideration of the relevant briefs and the evidence and testimony submitted at the hearing, the trial court entered its award of attorney fees to plaintiffs: $5,547.95 was awarded for the work done by Keck, Mahin and Cate, and $5,595.90 was awarded for the work done by David A. Axelrod and Associates. Thus, we cannot say the trial court abused its discretion in determining that plaintiffs presented sufficient evidence upon which to enter its award of attorney fees.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.