No. 2--96--0010

_________________________________________________________________

                                 IN THE

                                    

                       APPELLATE COURT OF ILLINOIS

                                    

                             SECOND DISTRICT

__________________________________________________________________

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of Du Page County.

                                )

     Plaintiff-Appellee,        )

                                )  No. 95--CM--3429

v.                              )

                                )

FELICIA THARPE-WILLIAMS,        )  Honorable

                                )  Donald J. Hennessy,

     Defendant-Appellant.       )  Judge, Presiding.

___________________________________________________________________

     JUSTICE BOWMAN delivered the opinion of the court:

     Defendant, Felicia Tharpe-Williams, was convicted following a

bench trial of retail theft (720 ILCS 5/16A--3(a) (West 1994)). 

The trial court sentenced her to one year of court supervision and

fined her $100 plus court costs.  Defendant now appeals her

conviction.  We affirm.

     The following is a summary of the trial evidence relevant to

the issues on appeal.  Wal-Mart maintains a security office in its

store in Darien, Illinois.  The office contains numerous video

monitors which are connected to video cameras located throughout

the store.  At the same time that the images are relayed from the

video cameras and sent (and displayed) on the video monitors, the

images are also recorded on a videotape.

     Eric Berg, a loss prevention agent for Wal-Mart, testified

that on June 16, 1995, he was observing the video monitors in the

security office.  For the previous two weeks, he had been

investigating Sandra Knight, who worked behind the courtesy desk. 

At approximately 3 p.m. on June 16, Berg saw defendant on the video

monitor approach Knight and place a large number of items on the

courtesy desk.  Defendant was also employed by Wal-Mart.  Knight

began to scan some of the items.  Defendant then walked out of the

picture, and Knight began to place some items which she had not

scanned in a Wal-Mart bag.  

     Berg further testified that defendant then reentered the

picture with a McDonald's bag (McDonald's operated a stand inside

the Wal-Mart) and placed the McDonald's bag in the seat of her

cart.  Defendant then took two unscanned items, a bottle of cologne

and a can of deodorant, which were on the courtesy desk, and placed

them in the McDonald's bag.  The bottle of cologne was a sample

bottle for the customers' use; it contained a label from the vendor

stating that the bottle was a tester and not for resale.  No sales

receipt for either item was found in the McDonald's bag.  Berg then

saw Knight placing additional unscanned items into Wal-Mart bags. 

Defendant was present and facing Knight when Knight failed to scan

some of the items and place them in the Wal-Mart bags.  Although

not entirely clear from the record, defendant apparently did write

a check (in the approximate amount of $60) for some of the

merchandise.  

     At this point, Berg notified his supervisor, Mick Pinneke,

about what was occurring.  Pinneke directed Berg to do a receipt

check to make sure that all the items were paid for.  Defendant was

then detained, and the receipt check revealed that there were items

in the bags that were not accounted for on the receipt.  Berg then

prepared a receipt of the items defendant had not paid for; the

total amount of the unpaid items was $18.67.

     According to Berg, Wal-Mart has an unwritten policy, which is

disclosed to employees during their orientation, that employees

should make purchases at the registers and not at the courtesy

desk.  There are no registers between the courtesy desk and the

exit doors.  Also, Wal-Mart did not have a policy of giving its

employees tester items.  Berg did not know if defendant and Knight

talked to each other during this incident because he could only see

the back of defendant's head.

     Mick Pinneke, a district loss supervisor for Wal-Mart,

testified that, while watching the video monitor, he saw Knight

place unscanned merchandise into a Wal-Mart bag.  Defendant was

facing Knight when this occurred.  According to Pinneke, defendant

was violent after she was detained by store security; she threw

merchandise, pushed a shopping cart at Pinneke, and repeatedly

called Knight's name.

     Officer Joseph Brady of the Darien police department testified

that he arrived at the store after defendant had been detained by

store security.  Officer Brady asked defendant how the unscanned

items got into the McDonald's bag and the Wal-Mart bag.  Defendant

replied that she did not know.  Officer Brady also testified that

Knight told him that she did not scan certain items for defendant.

     Defendant did not present any evidence in her case in chief. 

The trial court subsequently found her guilty of the offense of

retail theft and sentenced her to one year of court supervision and

fined her $100 plus court costs.

     Defendant has three contentions on appeal: (1) the trial court

erred in failing to exclude the testimony of Berg and Pinneke; (2)

she was not proved guilty beyond a reasonable doubt; and (3) the

trial court erred in finding her guilty on a theory of

accountability. 

     Defendant's first contention on appeal is that the trial court

erred in failing to exclude the testimony of Berg and Pinneke. 

Defendant posits essentially two arguments in support of this

contention: (1) Berg's and Pinneke's testimony was inadmissible

hearsay; and (2) Berg's and Pinneke's testimony violated the best

evidence rule.

     We first address defendant's argument that Berg's and

Pinneke's testimony constituted inadmissible hearsay testimony. 

Berg and Pinneke witnessed the incident at the courtesy desk by

watching a contemporaneous telecast of it on the video monitor in

the security office.  According to defendant, Berg and Pinneke did

not have any personal knowledge of what occurred at the courtesy

desk; rather, they repeated what the video camera, a third party,

had to say.  As such, defendant reasons, their testimony

constitutes inadmissible hearsay.  

     Initially, we note that defendant has waived this issue for

purposes of appellate review.  Although the issue was raised in her

post-trial motion, defendant failed to lodge a specific

contemporaneous objection to either Berg's or Pinneke's testimony. 

Accordingly, the issue is waived.  See People v. Enoch, 122 Ill. 2d

176, 186 (1988) (an issue is waived if it is not raised both in a

trial objection and in a written post-trial motion).  

     Waiver aside, we find defendant's argument to be meritless,

albeit novel.  Hearsay evidence is in-court testimony of an out-of-

court statement, which is offered to establish the truth of the

matter contained in the statement, and the value of which rests on

the credibility of someone other than the witness.  In re E.M., 262

Ill. App. 3d 302, 309 (1994).  Here, defendant assumes that the

video camera which telecast the incident was the source of an out-

of-court statement.  We disagree.  

     Defendant does not cite, and we have not located, any Illinois

case law which addresses this issue.  Nevertheless, it is axiomatic

that an out-of-court statement must be made by a person or writing,

not by an object such as a video camera.  Hearsay evidence is

inadmissible because it relies upon the credibility of someone

other than the witness.  In other words, hearsay evidence is

considered untrustworthy because the declarant is not subject to

cross-examination.  See People v. Holman, 103 Ill. 2d 133, 148

(1984) ("The fundamental purpose of the hearsay rule is to test the

value of assertions by exposing the source of the assertion to

cross-examination by the party against whom it is offered"); see

also M. Graham, Cleary & Graham's Handbook of Illinois Evidence

§801.1, at 636-37 (6th ed. 1994). In the context of hearsay

evidence, however, credibility and trustworthiness are

characteristics peculiar to people or documents written or

generated by people.  Objects such as a video camera neither have

nor lack credibility or trustworthiness.  If properly operated,

there is no reason to suspect that images received from a video

camera and displayed on a video monitor are unreliable.  As such,

the underlying basis for excluding hearsay evidence does not apply

to "out-of-court statements" made by a video camera.  Cf. People v.

Holowko, 109 Ill. 2d 187, 193 (1985) (records produced by

computerized telephone-call tracing equipment without manual or

human intervention are not hearsay evidence).  Hence, Berg's and

Pinneke's testimony was not inadmissible hearsay.

     Of course, a witness' testimony regarding what he observed

while viewing a contemporaneous, live telecast of an incident

requires foundational proof that the video system was functioning

properly.  Defendant, however, does not, and did not before the

trial court, maintain that the video system in this case was

functioning improperly on the day of the incident.  Accordingly, we

need not consider whether a proper foundation was laid for Berg's

and Pinneke's testimony regarding what they observed on the video

monitor.

     We next address defendant's argument that Berg's and Pinneke's

testimony violated the best evidence rule because the videotape of

the incident was not submitted into evidence.  As before, defendant

has waived this argument by failing to lodge a contemporaneous

objection to the testimony and by failing to raise it in her post-

trial motion.  See Enoch, 122 Ill. 2d at 186.

     Even if the issue were not waived, we are convinced that the

best evidence rule has no application to the circumstances involved

here.  The best evidence rule states a preference for the

production of the original of documentary evidence when the

contents of the documentary evidence are sought to be proved. 

Jones v. Consolidation Coal Co., 174 Ill. App. 3d 38, 42 (1988). 

There is no general rule that a party must produce the best

evidence that the nature of the case permits.  Jones, 174 Ill. App.

3d at 42.  The best evidence rule does not apply where a party

seeks to prove a fact which has an existence independent of the

documentary evidence, even though the fact might have been reduced

to, or is evidenced by, the documentary evidence.  Jones, 174 Ill.

App. 3d at 42.  For instance, an individual who hears a defendant's

confession may testify to it even though the confession may have

been simultaneously transcribed by a court reporter.  People v.

Spencer, 264 Ill. 124, 137-38 (1914).

     In this case, Berg's and Pinneke's testimony sought to prove

a fact which was independent of the videotape of the incident--

i.e., that they observed defendant place unpaid items in her bag as

well as accept a bag with unpaid items.  In other words, they

sought to testify not to the contents of the videotape, but to an

incident they observed on the video monitor.  Just as the

individual who hears a confession may testify that the defendant

confessed, even though the confession was simultaneously

transcribed by a court reporter, so too could Berg and Pinneke

testify to what they saw defendant do, even though that incident

was simultaneously recorded on videotape.  Although the videotape

of the incident " 'might be more reliable and satisfactory evidence

under ordinary circumstances than testimony from memory, the latter

is not rendered incompetent by the fact of the existence of the

former.' "  Anderson v. Oklahoma, 704 P.2d 499, 502 (Okla. Crim.

App. 1985), quoting People v. Kulwin, 102 Cal. App. 2d 104, ___,

226 P.2d 672, 674 (1951); see Jones, 174 Ill. App. 3d at 42.

     Moreover, the fact that Berg and Pinneke only observed the

incident because it was telecast by a video camera is irrelevant. 

Berg and Pinneke observed the incident on the video monitor at the

same time it was occurring.  As such, they testified to facts based

on their personal observations.  The situation is no different than

if Berg and Pinneke had been 100 yards away from defendant at the

time of the incident but they needed a telescope to observe what

was happening.  As long as the telescope was functioning properly,

we see no reason why they would not be able to testify as to what

they observed.  Similarly, as long as the video system was

functioning properly, Berg and Pinneke could testify as to what

they observed on the video monitor.  Because defendant never

contested below that the video system was functioning improperly,

Berg's and Pinneke's testimony was properly admitted.

     Of course, if Berg and Pinneke had attempted to testify as to

the contents of the videotape, then the best evidence rule would

have required that the videotape be authenticated and admitted into

evidence.  See M. Graham, Cleary & Graham's Handbook of Illinois

Evidence §1002.1, at 836-37 (6th ed. 1994).  However, they did not

attempt to testify as to the contents of the videotape.  Thus, the

best evidence rule does not apply.  See Pennsylvania v. Lewis, 424

Pa. Super. 531, 537, 623 A.2d 355, 358-59 (1993) (best evidence

rule barred police officer from testifying about the contents of a

videotape; police officer did not witness the alleged act of retail

theft which was supposedly recorded on the videotape).  

     Defendant's second contention is that she was not proved

guilty of the offense of retail theft beyond a reasonable doubt. 

In support of this contention, defendant emphasizes that she was

not present during part of the incident, that Berg and Pinneke did

not see her talking with Knight, and that Berg's testimony was not

substantially corroborated by Pinneke's.

     When faced with a challenge to the sufficiency of the

evidence, the reviewing court applies the standard set forth in

People v. Collins, 106 Ill. 2d 237, 261 (1985).  Under Collins, the

relevant inquiry is whether, after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a

reasonable doubt.  Collins, 106 Ill. 2d at 261.  A reviewing court

will not substitute its judgment for that of the trier of fact on

questions involving the weight of the evidence or the credibility

of the witnesses.  People v. Campbell, 146 Ill. 2d 363, 375 (1992). 

It is the province of the trier of fact to draw reasonable

inferences from the evidence, and we may not overturn a finding of

guilt unless the evidence is so unreasonable, improbable, or

unsatisfactory that there remains a reasonable doubt of the

defendant's guilt.  People v. Cunningham, 265 Ill. App. 3d 3, 5

(1994).

     Defendant was charged with committing the offense of retail

theft in violation of section 16A--3(a) of the Criminal Code of

1961 (720 ILCS 5/16A--3(a) (West 1994)).  To establish a violation

of section 16A--3(a), the State must prove: (1) that the defendant

knowingly took possession of, carried away, transferred, or caused

to be carried away or transferred, any merchandise; (2) that the

merchandise was displayed, held, stored, or offered for sale in a

retail mercantile establishment; and (3) that the defendant

intended to retain such merchandise, or intended to deprive the

merchant permanently of the possession, use, or benefit of such

merchandise, without paying the full retail value of such

merchandise.  720 ILCS 5/16A--3(a) (West 1994); People v. Liner,

221 Ill. App. 3d 578, 580 (1991).

     Viewing the evidence in the light most favorable to the State,

we conclude that a rational trier of fact could have found

defendant guilty of retail theft.  Berg testified that, although it

is company policy that employees purchase store items at the

regular cash registers, defendant brought her items to the courtesy

desk, the station nearest the exit.  Defendant then placed two

unrung items into a McDonald's bag.  At least one of these items,

the sample bottle of cologne, was store merchandise.  Moreover,

Berg and Pinneke both testified that defendant was facing Knight

when Knight failed both to scan some merchandise and then place

that merchandise in a Wal-Mart bag.  Defendant then took the Wal-

Mart bag and the McDonald's bag, but was detained before she could

exit the store.  A search of the bags revealed that defendant did

not pay for several items in the Wal-Mart bag and that she did not

have a receipt for the cologne and deodorant in the McDonald's bag. 

Based on this evidence, a rational trier of fact could infer that

defendant knowingly took possession of Wal-Mart's merchandise and

that she intended to retain the merchandise without paying the full

value of it.  Furthermore, and contrary to defendant's assertions,

the presence of the stolen merchandise in court, either in person

or through photographs, was not required to prove the retail theft. 

See People v. Mikolajewski, 272 Ill. App. 3d 311, 317 (1995).  We

therefore refuse to disturb defendant's conviction.  

     Defendant's final contention is that the trial court erred in

finding her guilty on a theory of accountability.  We need not

address this contention, however, in light of our foregoing

analysis.  Assuming, arguendo, that the trial court found defendant

guilty on a theory of accountability for Knight's acts, the record

is clear that the trial court also found defendant directly

responsible for the offense of retail theft.  As the preceding

paragraph explains, the evidence was sufficient to sustain this

finding of direct guilt.  Because we may affirm defendant's

conviction on the trial court's finding of direct guilt, we need

not consider whether defendant was also guilty under a theory of

accountability.

     For the foregoing reasons, the judgment of the circuit court

of Du Page County is affirmed.

     Affirmed.

     DOYLE, J., concurs.

     JUSTICE RATHJE, concurring in part and dissenting in part:

     I agree with the majority view that the testimony of the

videotape evidence was not inadmissible hearsay.  However, I

disagree with the conclusion that the defendant was found guilty of

theft as a principal beyond a reasonable doubt.

     I observe, first, that there is no evidence of a confession by

the defendant in this cause, nor is there any testimony by Sandra

Knight, the other employee involved in this cause, implicating the

defendant in any theft of merchandise from Wal-Mart.  The evidence

of the commission of the offense in this cause consists of the

testimony of two other store employees as to what they saw on the

videotape of the incident.

     According to the testimony of employees Berg and Pinneke, the

defendant placed items to be purchased on the counter and then left

the viewing area of the camera.  While the defendant was gone,

Knight placed unscanned items in a Wal-Mart bag.  There was no

evidence that the defendant was aware that these items were not

scanned prior to them being placed in the bags.  When the defendant

returned to the viewing area, she had a McDonald's bag with her,

and she placed items from the counter in the McDonald's bag. 

Again, there was no evidence that the defendant was aware that

these items had not been scanned prior to placing them in the

McDonald's bag.  While the defendant was facing Knight, Knight

placed more unscanned items into Wal-Mart bags, which the defendant

took with her.

     Central to the State's proof in this cause is the fact that

the defendant was facing Knight with her back to the camera while

Knight was placing unscanned merchandise into Wal-Mart bags. 

However, because there is no audio portion to the videotape, it is

only speculation and conjecture as to what went on between the

defendant and Knight while the unscanned items were placed into the

Wal-Mart bags.  The State's version requires us to assume that, at

all times, the defendant's attention was fixed on what Knight was

doing without actually proving that critical fact.

     While it is undisputed that unscanned items were found in the

defendant's possession, there is no proof beyond a reasonable doubt

that the defendant knowingly took possession of the items without

paying the full retail value of them.  720 ILCS 5/16A--3(a) (West

1994).  As the State's proof that the defendant was aware that the

items in her possession were not scanned amounts to conjecture and

speculation, I would conclude that the defendant was not found

guilty of retail theft beyond a reasonable doubt.