J.B. ESKER AND SONS, INC., Plaintiff-Appellee, v. CLE-PA'S PARTNERSHIP, Defendant-Appellant.

Fifth District   No. 5—99—0811

Opinion filed October 10, 2001.

H. Carl Runge, Jr., of Law Offices of H. Carl Runge, Jr., Ltd., of Collinsville, for appellant.

Lou J. Viverito, of Taylor Law Offices, P.C., of Effingham, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:
J.B. Esker & Sons, Inc. (plaintiff), filed a complaint for the foreclo-

sure of a mechanic's lien against Cle-Pa's Partnership (defendant). Defendant filed an answer and a counterclaim. The matter went to trial. Plaintiff was awarded $938 and defendant was awarded $26,145. After a later hearing, defendant was awarded $13,532 in attorney fees and $3,730.77 in costs. Defendant appeals, contending that the trial court improperly declined to award expert witness fees and the full amount of attorney fees. We reverse in part and remand.

## I. FACTS

On June 1, 1993, the parties entered into a contract wherein defendant agreed to pay plaintiff $238,870 to perform concrete and paving construction for a Grandpa's store in Greenville, Illinois. The contract contained the following clause:

> "15.4 ATTORNEY'S FEES. Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein."

On August 4, 1994, plaintiff filed a complaint seeking the foreclosure of a mechanic's lien against defendant. According to the complaint, defendant defaulted on the final balance due in the amount of $33,403.

Defendant filed an answer, affirmative defenses, and a counterclaim. In its two affirmative defenses, defendant alleged that charges for additional work claimed by plaintiff were not done with change orders as required by the contract and that defendant was entitled to keep the withheld amount, as the contract allowed defendant to keep 10% of its payment until the completion of an inspection and the acceptance of the work by defendant. In its counterclaim, defendant alleged that as a result of unworkmanlike performance by plaintiff, defendant anticipated having to take up a portion of the tile laid on the concrete and level the concrete floor.

The bench trial extended over a period of six days. The trial commenced on January 21, 1998, and was recessed on January 22, 1998. The trial resumed on March 30, 1998, and continued until recessed on April 1, 1998. The trial concluded on June 22, 1998.

Defendant presented the testimony of Dr. W. Gene Corley, structural engineer of Construction Technology Laboratories, Inc., Skokie, Illinois, who testified during two days of the trial. Dr. Corley had traveled to the store, inspected the site, and conducted a series of measurements and tests. He wrote a report on his findings and was

deposed on two separate occasions. At the trial, Dr. Corley's testimony included the observations he made on his inspection and a repair estimate of $193,000. Defendant claims that Dr. Corley spent 156.3 hours on the case and that the amount of his bill was $22,925.25.

Over defendant's objection, plaintiff presented the testimony of William Gould, former vice-president of Paul Apt Floor Coverings. Gould testified that in 1994, Paul Apt Floor Coverings presented a repair estimate of $26,145. Gould testified that defendant did not authorize repair work on the estimate.

Plaintiff contended that additional expenses were incurred during construction because the ground was soft and wet. Plaintiff asserted that as a result of the conditions it had to construct an access road, use a concrete pump, and repair a curb. Plaintiff submitted documents regarding the additional work, including an invoice of $938 for curb repair.

At the close of the evidence, the court took the matter under advisement. On October 28, 1998, the court entered an order. The court noted that, including the amount to be paid under the original contract and the additional work performed, the amount requested by plaintiff was $259,291.50. The court stated that defendant paid $224,928.50, which left $34,301 unpaid. The court found that the curb repair was done at the request of defendant, and the court awarded plaintiff $938. However, the court found that plaintiff failed to prove that defendant was responsible for any other additional work performed outside the contract. In regard to the balance remaining under the contract, the court found that plaintiff's performance was defective and that defendant properly withheld 10% from the bill. The court stated, "Judgment is hereby rendered on behalf of Defendant, Cle-Pa's[,] on the Complaint for Mechanic's Lien."

The court awarded defendant $26,145 on the counterclaim. The court stated, "[T]he cement work performed by [P]laintiff breached the contract for construction; however, it is the further finding of this court that the Defendant's request to Plaintiff for continuing the construction[,] despite the knowledge of the faulty concrete, contributed to [the] further inadequacy of the concrete and the eventual damage to the floor of the Grandpa's Store." The court declined to award defendant the amount sought on the counterclaim. The court found that defendant had failed to mitigate damages and had failed to present evidence on diminution of value. The court was also critical of Dr. Corley's testimony, stating:

> "Although this court finds Defendant['s] expert testimony to be credible on the issue of lack of adequate manpower on the floor pours, this court finds the remainder of said testimony on the issue

of damages not to be credible for the following reasons: [t]he labor rates he used are utilized in union agreements; he did not obtain any estimates from flooring contractors in the Greenville area for removal nor [sic] repair of the tile; [and] he used a labor unit cost of $3.00 per square feet for installing vinyl tile instead of the unit cost of $1.33 per square foot for installing vinyl composition tile."

The court ordered the parties to bear their own costs and reserved the issue of attorney fees for further hearing. Defendant filed a motion to reconsider. The motion was denied and defendant filed a petition for attorney fees. Attached to the petition was a bill from Dr. Corley for $22,925.25.

The petition also contained a sworn and subscribed affidavit from H. Carl Runge, Jr., for attorney fees and expenditures for the total amount of $22,662.07. An "Itemized Statement for Services Rendered" set forth attorney fees in the amount of $18,932. The document detailed the tasks undertaken, the date performed, and the time spent on an hourly basis at the rate of $100 per hour. This document also set forth $3,730.07 for other items, such as travel and deposition transcripts.

Also attached to the petition was an unsigned affidavit for attorney fees and costs of John W. Kelsey for $8,307.44, at an hourly rate of $95. On the letterhead of the office of John W. Kelsey were two documents entitled "Statement for Professional Services Rendered." These documents listed phone tolls, postage, and mileage expenses incurred on specific dates for certain tasks. The documents did not itemize the hours spent.

At the hearing on the petition, plaintiff argued that Runge had previously prepared a statement seeking attorney fees equivalent to one-third of the award given to defendant. Runge stated that the document was hastily prepared for plaintiff's counsel's review and that it was not signed or sworn to. (Neither party referenced this document by page number, and it could not be located in the record.)

On November 1, 1999, the court entered an order awarding defendant attorney fees in the amount of $13,532 and for "costs, charges[,] and expenses" in the amount of $3,730.77. Defendant filed this appeal.

## II. ANALYSIS

■ Under the agreement entered into by the parties, the "prevailing party" is entitled to reasonable attorney fees, costs, charges, and expenses. A prevailing party, for purposes of awarding attorney fees, is one that is successful on a significant issue and achieves some benefit in bringing suit. *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 753, 607 N.E.2d 1337, 1348

(1992). A party that receives judgment in his favor is usually considered the prevailing party. *Tomlinson v. Dartmoor Construction Corp.*, 268 Ill. App. 3d 677, 687, 645 N.E.2d 376, 383 (1994). Although in some cases a court may decide there is no prevailing party, the court properly declined to make such a finding here. See *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1035, 715 N.E.2d 804, 814 (1999). In this case, the trial court entered a judgment for defendant. The trial court apparently believed that defendant was the prevailing party because the court awarded some attorney fees and costs to defendant.

The success defendant had in defeating the claim against it and in securing an award on the counterclaim undoubtedly indicates that it was the prevailing party. As the prevailing party, defendant benefits from the contract.

## A. Attorney Fees

Defendant contends that there should have been an award of attorney fees for the full amount submitted to the trial court. Plaintiff contends that the trial court properly exercised discretion in denying the full amount submitted. Plaintiff contends that the fact that the trial court's ruling was not totally in defendant's favor is sufficient ground, in itself, to reduce the fee. Plaintiff's arguments are unconvincing.

■ Generally, a party is responsible for his own attorney fees. *Abdul-Karim v. First Federal Savings & Loan Ass'n of Champaign*, 101 Ill. 2d 400, 412, 462 N.E.2d 488, 493 (1984). An exception exists when a contract provides for an award of attorney fees. *Mirar Development, Inc. v. Kroner*, 308 Ill. App. 3d 483, 488, 720 N.E.2d 270, 274 (1999). Contractual provisions for an award of attorney fees must be strictly construed, and the court must determine the intention of the parties regarding the payment of fees. *Mirar Development, Inc.*, 308 Ill. App. 3d at 488, 720 N.E.2d at 274.

■ In this case, there was no justification for a reduction in the award of attorney fees, based on the results obtained by defendant's counsel. The fact that the court ruled in plaintiff's favor on some issues does not create a basis for a reduction in the award of attorney fees. In *Tomlinson*, the defendant contended that the plaintiffs were not entitled to all reasonable attorney fees because the plaintiffs did not prevail on all disputed issues. *Tomlinson*, 268 Ill. App. 3d at 687-88, 645 N.E.2d at 383. In affirming an award of all documented fees, the court stated:

> "In the present case, the trial court entered judgment in favor of plaintiffs and against defendant and ordered defendant to pay

plaintiffs the amount of the judgment. As such, we conclude that plaintiffs were the sole prevailing party and are entitled to recover all costs and expenses, including reasonable attorney fees incurred by them in connection with this dispute. Moreover, if we were to accept defendant's approach, then the award of damages to the losing party pursuant to a contractual fee-shifting provision such as the one in the case at bar would often be greater than the award to the party in whose favor the trial court entered judgment. We believe that the better approach is that, with respect to an award of attorney fees in civil cases pursuant to a contractual fee-shifting provision, there is only one prevailing party absent the parties' mutual consent to the contrary." *Tomlinson*, 268 Ill. App. 3d at 687-88, 645 N.E.2d at 383.

Defendant is the sole prevailing party, and its counsel obtained excellent results. Defendant defeated the claim against it and received an award on the counterclaim. See *Brewington v. Department of Corrections*, 161 Ill. App. 3d 54, 64, 513 N.E.2d 1056, 1064 (1987) (excellent results obtained by the prevailing party for purposes of awarding attorney fees in an Illinois Human Rights Act suit even though the plaintiff was not awarded back pay and reinstatement). The relief obtained by defendant was substantial, and there was no reason for reducing the award of attorney fees based on the result obtained. See *Aero Testing & Balancing Systems, Inc. v. Human Rights Comm'n*, 185 Ill. App. 3d 956, 971, 541 N.E.2d 1229, 1238 (1989), *overruled on other grounds by Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 547 N.E.2d 437 (1989) (in actions under the Illinois Human Rights Act, the prevailing party is entitled to all reasonable fees if there is little distinction between the prevailing and nonprevailing issues); see also *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983) (the prevailing party was entitled to reasonable attorney fees under 42 U.S.C. § 1988 (1982) according to the degree of success).

The fact that the court did not grant defendant the total amount of its counterclaim does not alter the fee-shifting agreement. When a contract calls for the shifting of attorney fees, a trial court should award all reasonable fees. See, *e.g.*, *Midwest Concrete Products Co. v. La Salle National Bank*, 94 Ill. App. 3d 394, 398, 418 N.E.2d 988, 991 (1981); *Amoco Realty Co. v. Montalbano*, 133 App. 3d 327, 335, 478 N.E.2d 860, 866 (1985). As defendant was the prevailing party, according to the contract it is entitled to all reasonable attorney fees.

■ The question then becomes what attorney fees were reasonable. In the absence of an express provision for the amount of fees, under a general contract providing for attorney fees, an attorney is

entitled to be paid for the services rendered as shown by the evidence. *Alton Banking & Trust Co. v. Schweitzer*, 121 Ill. App. 3d 629, 635, 460 N.E.2d 105, 109 (1984). The determination of reasonableness is a matter for the trial court's discretion. *Mercado v. Calumet Federal Savings & Loan Ass'n*, 196 Ill. App. 3d 483, 493, 554 N.E.2d 305, 312 (1990). The party seeking fees has the burden of presenting the court with sufficient evidence from which it can determine the reasonableness of the fees. *Mercado*, 196 Ill. App. 3d at 493, 554 N.E.2d at 312. However, attorney fees may be reasonable even if the fees are disproportionate to the monetary amount of an award. In determining the reasonableness of the fee, the court may look to various factors including: (1) the skill and standing of the attorney, (2) the nature of the case, (3) the novelty of the issues involved, (4) the significance of the case, (5) the degree of responsibility required, (6) the customary charges for comparable services, (7) the benefit to the client, and (8) the reasonable connection between the fees sought and the amount involved in the litigation. *Mercado*, 196 Ill. App. 3d at 493, 554 N.E.2d at 312.

There is no indication that any of Mr. Runge's fees were unreasonable. In an apparent attempt to fashion a result acceptable to all parties, the court reduced the award of attorney fees. Nonetheless, the court did not rule that any of the attorney fees were excessive, redundant, or otherwise unnecessary or unreasonable. The trial of this case lasted six days. The subject matter of the litigation was complex and naturally would require extensive preparation. The hourly rate of $100 is far from exorbitant. Despite plaintiff's contention that Runge had previously formed a bill that was significantly lower than the amount claimed or the amount awarded by the court, the previously submitted incomplete bill does not undermine the reasonableness of the amount claimed by Runge, and the court apparently did not use this other bill to help form its decision. Mr. Runge's claimed fees are reasonable, and under the terms of the contract, defendant is entitled to reimbursement.

Plaintiff points out that the party seeking attorney fees must set forth with specificity the legal services provided, the identity of the attorney providing the legal services, an itemization of the time expended for the individual service, and the hourly rate charged. *In re Marriage of Konchar*, 312 Ill. App. 3d 441, 444, 727 N.E.2d 671, 674 (2000). Mr. Runge submitted a detailed bill itemizing the time spent in fractions of an hour. On the other hand, the court's denial of fees for Mr. Kelsey appears well-founded. The claimed attorney fees for Mr. Kelsey were not properly documented. The affidavit was not signed, and the bill attached to the petition did not have an itemization of the

time expended. As such, the claimed fees were not properly documented. See *Mercado*, 196 Ill. App. 3d at 494, 554 N.E.2d at 312; *Konchar*, 312 Ill. App. 3d at 444, 727 N.E.2d at 674.

### B. Expert Witness Fees

The second issue raised by defendant is whether it is entitled to the fees of its expert witness, Dr. Corley. Defendant contends that it is entitled to fees pursuant to the contract. Plaintiff contends that the award of expert witness fees was not contemplated when making the contract and, in the alternative, that Dr. Corley was not a credible witness worthy of compensation. The resolution of this issue requires this court to first address whether parties can contract for the shifting of expert witness fees and then to address whether such fee-shifting is appropriate in this case.

■ Initially it must be determined whether parties can contract for the shifting of expert witness fees. Law and public policy demand that competent parties be free to contract with one another. *Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540, 549, 687 N.E.2d 968, 972 (1997). Parties to a contract are free to choose any terms that are not against public policy and do not contravene some positive rule of law. *Green v. Safeco Life Insurance Co.*, 312 Ill. App. 3d 577, 581, 727 N.E.2d 393, 397 (2000). Parties are bound to the contracts they make, and the court has a duty to construe and enforce them. *Green*, 312 Ill. App. 3d at 581, 727 N.E.2d at 397.

■ There appears to be no reason, and plaintiff presents no argument, why parties could not contract for the payment of expert witness fees. On the other hand, allowing parties to negotiate their responsibilities in the event of litigation is consistent with the principle of freedom of contract. See *Green*, 312 Ill. App. 3d at 581, 727 N.E.2d at 397. Defendant is also able to point to language in prior decisions that parties are able to make specific agreements for the payment of expenses. See *Bertuli v. Gaull*, 215 Ill. App. 3d 603, 604, 574 N.E.2d 1390, 1391 (1991) ("The rule in Illinois is well established that attorney fees and the ordinary expenses of litigation are not allowable to the successful party in the absence of a statute or specific agreement of the parties"). As parties can contract for the payment of ordinary expenses of litigation, the question is whether there was a specific agreement for the payment of expert witness fees in this case.

Plaintiff contends that the trial court was correct in ruling that the parties did not contemplate the payment of expert witness fees when they entered into the contract. The court stated, "I don't think an expert—a $20,000.00 expert witness fee was contemplated between the parties when the contract was entered into." Defendant contends

that expert witness fees were addressed by the language of the contract.

■ In order to determine what was contemplated by the parties, we must look at the contract. The construction of a contract is a question of law, and the courts have a duty to effectuate the intent of the parties to the contract. *Green*, 312 Ill. App. 3d at 581, 727 N.E.2d at 397. Under Illinois law, a written agreement is presumed to speak the intention of those who signed it, and the intention must be determined from the language used. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999), quoting *Western Illinois Oil Co. v. Thompson*, 26 Ill. 2d 287, 291, 186 N.E.2d 285, 287 (1962). Absent ambiguity, the intention of the parties is to be ascertained by the language of the contract and not by the construction placed on it by the parties. If a court can ascertain its meaning from the plain language of the contract, there is no ambiguity. *American National Trust Co. v. Kentucky Fried Chicken of Southern California, Inc.*, 308 Ill. App. 3d 106, 118, 719 N.E.2d 201, 210 (1999).

■ Defendant contends that it is entitled to reimbursement for expert witness fees because the contract allows the prevailing party "to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred." "Attorney fees" and "costs" have been held to be legal terms of art. *Bertuli*, 215 Ill. App. 3d at 605, 574 N.E.2d at 1391. As was done in this case, parties may contract for the shifting of attorney fees and costs by using the terms "attorney's fees" and "costs." *Bertuli*, 215 Ill. App. 3d at 605, 574 N.E.2d at 1391. However, the award of attorney fees and costs does not explain the presence of the terms "charges" and "expenses." Contract terms and clauses should not be disregarded as surplusage, as it is presumed that language is not employed idly. *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 159, 709 N.E.2d 249, 253 (1999); *Illinois Valley Asphalt, Inc. v. La Salle National Bank*, 54 Ill. App. 3d 317, 322, 369 N.E.2d 525, 529 (1977). The term "charges" does not appear to be related to the fees of expert witnesses. The question then becomes whether the term "expenses" encompasses expert witness fees.

The term "expenses" is used in regulating the discovery process. For example, regarding dismissals sought for the purpose of avoiding discovery deadlines, Supreme Court Rule 219(e) provides, "The court may, in addition to the assessment of costs, require the party voluntarily dismissing a claim to pay an opposing party or parties reasonable expenses incurred in defending the action including but not limited to discovery expenses, opinion witness fees, reproduction costs, travel expenses, postage, and phone charges." 166 Ill. 2d R. 219(e). Similarly,

in a condemnation action a defendant is entitled to reimbursement of "all costs, expenses[,] and reasonable attorney fees" if a plaintiff dismisses his complaint. 735 ILCS 5/7—123 (West 1998). Expert witness fees have been awarded as expenses under this statute. See *Commissioners of Lincoln Park v. Schmidt*, 395 Ill. 316, 325, 69 N.E.2d 869, 874 (1946), *overruled in part by Department of Public Works & Buildings v. Lanter*, 15 Ill. 2d 33, 153 N.E.2d 552 (1958); *Forest Preserve District v. Kean*, 303 Ill. 293, 296, 135 N.E. 415, 416 (1922) (establishing that the fees of experts are to be awarded as expenses unless the amount is shown to be unreasonable). An order under Supreme Court Rule 219(e) or in a condemnation action requiring the payment of all "expenses" would, therefore, require the payment of opinion witness fees.

The term "expenses" is also frequently used in the context of the ethics of the legal profession. Professional ethics require limitations on the financial support lawyers can give their clients in the course of litigation. The support lawyers can give their clients has been defined by the term "expenses." For example, under the Restatement (Third) of Law Governing Lawyers, a "lawyer may make or guarantee a loan covering court costs and expenses of litigation." Restatement (Third) of Law Governing Lawyers § 36 (1998). The Restatement defines such expenses as including "ordinary- and expert-witness fees, court-reporter fees, and investigator fees." Restatement (Third) of Law Governing Lawyers § 36, Comment *c* (1998).

The term "expenses" is also used in contracts between attorneys and their clients. Corpus Juris Secundum uses the term "expenses" when explaining the reimbursement to which an attorney is entitled: "Reimbursement for Expenses[—]In the absence of a contract or custom to the contrary, the attorney may recover disbursements made by him which were usual and reasonably necessary to carry out his employment." 7A C.J.S. *Attorney & Client* § 298, at 558 (1980). The employment of an attorney gives the attorney the implied authority to bind the client for the payment of the fees of expert witnesses as a part of the expenses and services properly and reasonably incurred in conducting the case. 7A C.J.S. *Attorney & Client* § 212 (1980). A client entering into a contract whereby he agreed to pay for "expenses" would, therefore, be obligated to pay the fees of an expert witness if the witness was usual and reasonably necessary to carry out the litigation.

We see no reason "expenses" should mean anything different in a contract between these two parties contemplating the possibility of litigation. In entering the contract, the parties saw the potential for litigation and inserted a clause governing their responsibilities if liti-

gation occurred. The parties were both sophisticated. Both parties knew the expenses of litigation and had at their disposal similar resources to proceed in litigation.

Given the subject matter of the contract, it was clearly foreseeable that the fees of expert witnesses would be an expense if litigation arose. Expert witnesses are usual and reasonably necessary in mechanic's lien actions. Indeed, courts encourage the use of an expert if the testimony aids the understanding of the trier of fact. See *Ryan v. E.A.I. Construction Corp.*, 158 Ill. App. 3d 449, 461, 511 N.E.2d 1244, 1252 (1987). The fees of expert witnesses were fairly contemplated as an "expense" of litigation.

Awarding the fees of expert witnesses as part of the "expenses" of litigation is consistent with awarding compensatory damages. Plaintiff complains that if it must pay the fees of Dr. Corley, it will be in a worse position than if the contract had been properly performed. The goal of awarding compensatory damages is to place the aggrieved party in the same position it would have been in had the contract been performed. *Illiana Machine & Manufacturing Corp. v. Duro-Chrome Corp.*, 152 Ill. App. 3d 764, 768, 504 N.E.2d 974, 976 (1987). Shifting the payment of expert witness fees to the breaching party would place the prevailing party in the position it would have been in had the other terms of the contract been performed. See *McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 54 (Me. 1996). Therefore, following the plain language of the contract and awarding expenses in the form of expert witness fees is consistent with the award of compensatory damages in this case.

Plaintiff contends that it should not be responsible for the fees of Dr. Corley as he was not a credible witness. Indeed, in addressing the issue of Dr. Corley's compensation, the court stated that it found Dr. Corley "not to be credible on some of the issues." However, the test for whether the fees of an expert witness are to be paid is not based on the merit of the courtroom testimony, but on the value of his services in the course of conducting litigation. See *Connors v. Howard Johnson Co.*, 30 Mass. App. 603, 606, 571 N.E.2d 427, 430 (1991); *Avellone v. Mehta*, 544 So. 2d 1122, 1123 (Fla. App. 1989); *Great Western Sugar Co. v. Northern Natural Gas Co.*, 661 P.2d 684, 695 (Colo. App. 1982).

We see no difference between the use of the term "expenses" in an attorney-client contract and the use of the term in a contract between two parties contemplating litigation. In a contract calling for a client to reimburse the attorney for the "expenses" of litigation, the expenses that a client is responsible for are those which are reasonably necessary for the attorney to perform the job of representing his

client. The client could be responsible even when the court doubts the expert's testimony. Even if the expert does not testify, the client would be accountable if the expert was reasonably necessary to prepare for trial. Similarly, in a contract calling for the parties to shift the expenses of litigation, the responsible party should be accountable for those expenses that are reasonably necessary. See *In re Marriage of Winton*, 216 Ill. App. 3d 1084, 1092, 576 N.E.2d 856, 862 (1991) (under a statute that shifts expert witness fees, the standard for determining the reasonableness of expert witness fees is similar to the guidelines for attorney fees). Accordingly, under the contract in this case, the prevailing party is entitled to those expert witness fees that were reasonably necessary. Upon remand, the trial court is to determine what expert witness fees were reasonably necessary for defendant to incur in the process of this litigation.

For the foregoing reasons, this court reverses the order of the circuit court of Bond County and remands with directions.

Affirmed in part and reversed in part; cause remanded with directions.

MAAG, P.J., and HOPKINS, J., concur.