NOTICE
Decision filed 02/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241159-U

NO. 5-24-1159

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| BOEHM ELECTRICAL CONTRACTORS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 18-CH-61 |
| | ) | |
| EDWARD ROSE DEVELOPMENT COMPANY, LLC, | ) | Honorable |
| | ) | Jason M. Bohm, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.*

**ORDER**

¶ 1     *Held*: The trial court did not err by granting defendant's motion for summary judgment. The trial court did not abuse its discretion by awarding attorney fees to defendant. Further, the trial court did not err by denying plaintiff's motion to reconsider.

¶ 2     Plaintiff, Boehm Electrical Contractors, LLC (Boehm), appeals the Champaign County circuit court's order granting summary judgment in favor of defendant, Edward Rose Development Company, LLC (Edward Rose), and the trial court's award of attorney fees to defendant. Boehm appeals, arguing there were genuine issues as to material facts, and therefore the court erred by granting defendant's motion for summary judgment. Boehm further argues the court abused its

---

*Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d (1992).

1

discretion in awarding attorney fees to Rose. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                              I. BACKGROUND

¶ 4      In 2015, Rose oversaw the construction of several apartment buildings in Champaign. In April 2015, Rose first contracted with Boehm to provide underground electrical services, electrical wiring, and electrical fixtures for three buildings in construction project. Those buildings were designated as Buildings 13, 16, and 17 (electrical contract). In October 2015, Rose contracted with Boehm to install cable and telecommunications wiring for the same three buildings (cable contract). The contracts contained the following paragraphs:

> "5.      Contractor shall commence work promptly when notified and shall work continuously until work is completed.
>                                    * * *
> 13.      If, in Builder's opinion, Contractor fails to perform substantially in accordance with this contract, or is responsible for substantial delays and fails within 48 hours of written notice to satisfy all unsatisfactory matters, Builder may terminate this contract for all buildings, or for any specific building(s), included in this contract. Builder may avail himself of any legal remedies available to secure satisfaction of this contract. If Contractor fails to perform in accordance with the terms of this contract, Contractor shall pay all costs, including, without limitation, attorney fees, administrative expenses and court costs incurred by Builder in enforcing the terms of this contract."

¶ 5      The terms of the electrical contract called for Boehm to be paid approximately $390,000, 50% to be paid upon completion of the "rough in" work and 50% to be paid upon completion of the "finishing" work. The terms of the cable contract called for Boehm to be paid a total of $31,008, 45% to be paid upon completion of the "rough in" work and 55% to be paid upon completion of the "finishing" work.

¶ 6      On October 6, 2017, Rose sent Boehm a letter (48-hour notice). That letter referenced the "ELECTRICAL CONTRACT, DATED 4/6/15" and the "CABLE TV AND TELEPHONE WIRING CONTRACT, DATED 10/22/15." The body of the letter read as follows:

2

"This letter will serve as your '48 Hour Written Notice" in accordance with paragraph #13 of the above captioned contracts. You are responsible for substantial delays.

We have given you schedules for both Buildings #16 & 17, requesting you meet them. You have failed to do so and continue to fall further behind. You are now required to have Building #17 finish plumbing completed in the first three corridors by October 30, 2017 and the second three corridors by November 24, 2017, along with final inspections.

We are hereby requiring you to honor paragraph #5 of your contracts, man the job properly, commence work promptly when notified and work continuously until the work is completed. If you fail to perform, we will terminate the contracts and hire others to complete the work, charging the cost thereof to your account."

¶ 7    On December 22, 2017, Rose sent a letter to Boehm terminating the contracts. That letter referenced the same contracts and stated the following, in pertinent part:

"The purpose of this letter correspondence is to terminate the above captioned contracts.

On October 6, 2017, we sent you a completion date of November 24, 2017 for Building #17, including final inspections. As of today, December 22, 2017, the building is still not complete. You have not properly managed or manned this job and we cannot continue to wait for you to complete the work remaining on **Building #16.**[ ]

Once work is complete at Building #17, you will need to submit an invoice to the Jobsite Superintendent to receive payment. We will hire others to complete the remaining work on **Building #16.**[ ]" (Bold in original.)

On January 23, 2018, Boehm appeared on the job and was denied entry to the jobsite.

¶ 8    Boehm filed mechanic's liens for each contract and against the property. On March 7, 2018, Boehm filed a complaint requesting foreclosure on both mechanic's liens. The complaint also contained two counts for breach of contract, one for each contract. On May 11, 2018, Edward Rose filed an answer, affirmative defenses, and a counterclaim alleging Boehm had breached the contracts by failing (1) to provide adequate labor and materials, (2) to work continuously, (3) to

meet job completion and project schedules, and (4) to provide sworn statements and lien waivers as provided by the contracts.

¶ 9 Boehm filed a motion for summary judgment on March 16, 2022. It was supported by an affidavit signed by Patrick A. Boehm. In addition to claiming the monies owed, it stated:

> "8. That Edward Rose *** refused to allow Boehm *** to complete the work on the job and ejected Boehm *** from the project, preventing Boehm from doing any further work.
>
> * * *
>
> 12. That all labor and materials that my company provided were of excellent quality and improved the property and further allowed Edward Rose *** to complete the development project."

Documentation attached to the Boehm affidavit included copies of the contracts, paid invoices, unpaid invoices, and the mechanic's liens.

¶ 10 On April 5, 2022, Edward Rose filed a response to Boehm's motion for summary judgment. Attached was a counteraffidavit signed by Jim Vincent (Rose affidavit), a construction manager for Edward Rose. The Rose affidavit alleged, in part, that:

> "9. Boehm failed to provide adequate labor and materials to meet job completion schedules and caused significant delays to the Project.
>
> * * *
>
> 11. Boehm's performance failures were raised during monthly construction meetings, including during the time period of June 1, 2017 through February 1, 2018."

The Rose affidavit also asserted that Edward Rose properly terminated the contracts after providing Boehm with written notice, and that it had either paid or tendered payment to Boehm for all amounts due based upon the work Boehm had completed on the project. Attached were several exhibits, including copies of the weekly progress schedules, documents from the monthly construction meetings, the October 6, 2017, 48-hour notice, and the December 22, 2017, termination letter.

4

¶ 11    On October 23, 2023, Edward Rose filed its own motion for summary judgment, arguing that it was entitled to summary judgment against Boehm's claims. Edward Rose contended that it had complied with the contracts in question, the contracts were properly terminated, and that it had paid or tendered all monies owed to Boehm. Edward Rose also argued that it was entitled to summary judgment on its counterclaims, arguing that Boehm breached the contracts by failing to provide adequate materials and labor, by failing to meet job completion schedules, and by wrongfully filing liens against the property.

¶ 12    Two days later, on October 25, 2023, Boehm filed a reply in support of its own motion for summary judgment. Boehm argued it had provided undisputed facts establishing its right to recover unpaid costs for the value of services rendered and asked that the circuit court grant its motion for summary judgment.

¶ 13    On November 27, 2023, Boehm filed a response to Edward Rose's motion for summary judgment, in which it argued "there are substantial questions of fact that must be addressed before judgment can be entered for either party" and that Edward Rose was not entitled to judgment as a matter of law. Attached to Boehm's pleading was another affidavit from Patrick Boehm, dated November 22, 2023. This affidavit asserted that Boehm had performed all the work on the property "in a timely and workmanlike manner" and that Boehm "was not informed that its work was delayed or behind schedule." In the affidavit, Boehm also asserted that the 48-hour notice was deficient since the letter also provided new work dates more than 48 hours beyond the October 6, 2017, date of the letter. Boehm also claimed that the 48-hour notice was insufficient because the body of the letter referenced "plumbing" work, and that Boehm had not contracted with Edward Rose to complete any plumbing work, only electrical work. Attached were numerous exhibits,

including Boehm's first affidavit, that were previously filed as a part of Boehm's motion for summary judgment.

¶ 14 On December 11, 2023, Edward Rose filed a reply to Boehm's response to its motion for summary judgment, asserting that Boehm had failed to dispute the legal and factual grounds set forth in its motion. Relying on Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013), Edward Rose argued that Boehm failed to substantively respond to its motion by (1) failing to indicate that it was based on Boehm's personal knowledge, (2) failing to attach documents other than those previously submitted in support of Boehm's motion for summary judgment, and (3) failing to "set forth with particularity facts upon which the claim, counterclaim, or defense is based," but instead relying on "conclusions" instead of "facts admissible in evidence." Edward Rose further argued that (1) Boehm failed to dispute that it failed to satisfy contractual conditions required to receive payment from Edward Rose, (2) Edward Rose properly terminated the contracts, (3) Edward Rose paid or tendered payment for all completed work, and (4) Edward Rose was entitled to summary judgment on its counterclaim because it is undisputed that Boehm breached the contracts.

¶ 15 On April 30, 2024, the trial court issued a written order denying Boehm's motion for summary judgment and granting Edward Rose's motion for summary judgment. The court found Boehm's motion and supporting documentation lacking in substance, noting that the only support for Boehm's motion for summary judgment was "self-serving affidavits of Patrick Boehm." Accordingly, the court found the Boehm affidavits to be "insufficient to raise a genuine issue of material fact and *** nothing more than *** bald claims that it did the work." The court further found that Boehm had breached the contracts by failing to complete its work in a timely fashion and failed to cure that breach when given the opportunity to do so. The court also found that Boehm breached the contract by failing to provide Edward Rose with the contractually required lien

waivers but instead chose to file the mechanic's liens. The court found that Edward Rose "rightly terminated the remaining contracts with Boehm Electrical." Accordingly, the court found Boehm did not have valid mechanic's liens. Because the replacement contractor hired by Edward Rose finished the work for less money than the contractual amount that would have been due to Boehm under the contracts, the court declined to award damages to Edward Rose. Noting, however, that the contracts allowed Edward Rose to recover attorney fees and court costs, the court gave Edward Rose time to submit a petition for attorney fees and costs.

¶ 16    Edward Rose submitted a petition requesting $55,932.50 in attorney fees, representing 110.25 hours of work from several attorneys with an average hourly rate of $502.43 an hour. The petition was supported by an affidavit from Jad Sheikali, Edward Rose's lead attorney. Also attached to the petition were several invoices issued from May 17, 2018, through January 17, 2024. Edward Rose also asked the court to order Boehm to relinquish the mechanic's liens. Boehm filed a response to Edward Rose's petition for attorney fees, arguing that they were overinflated and unreasonable, and that many of the entries were too vague to warrant payment.

¶ 17    Following a hearing on July 3, 2024, the court entered a written order on July 9, 2024, disallowing $10,291 in fees incurred before but not accounted for in the Rose affidavit. The order awarded the $1,465 in fees mentioned in the Rose affidavit and $43,636.25 in fees incurred after the Rose affidavit for a total award of $45,101.25 in attorney fees.

¶ 18    On August 8, 2024, Boehm filed a motion to reconsider asking the trial court to reverse its decision granting Edward Rose's motion for summary judgment and the size of the award of the attorney fees. Citing the parties' affidavits, Boehm argued there were genuine issues of material fact and that the court erred, as a matter of law, in granting summary judgment in favor of Edward Rose. Specifically, Boehm argued that although the Rose affidavit claimed that Boehm was

7

responsible for delays because it did not provide adequate labor and materials, and that Edward Rose provided Boehm with a proper 48-hour notice, Boehm's affidavit stated that the work was timely completed in compliance with the contract and project schedules and in coordination with other trades. Boehm also noted its affidavit contested whether the 48-hour notice was proper notice since "the letter only complained that Boehm had fallen behind on 'finish plumbing.' " According to Boehm, these are genuine issues regarding material facts, and therefore summary judgment was improper. Boehm also argued that by granting Edward Rose's motion for summary judgment, the court had weighed the credibility of the affidavits.

¶ 19 Edward Rose filed a response on September 13, 2024. Initially, Edward Rose argued that Boehm did not dispute, in the parties' summary judgment briefings, either of Edward Rose's allegations that Boehm failed to provide lien waivers or that Edward Rose terminated the contracts upon at least 48 hours' notice. Edward Rose also argued that Boehm's affidavit failed to comply with Illinois Supreme Court Rule 191 in that it contained conclusions without any documentary evidence or factual support, while the Rose affidavit included hundreds of pages of documentation supporting its representations, and that Boehm did not dispute the authenticity of the provided documentation.

¶ 20 On September 27, 2024, Boehm filed a response, noting that Rule 191 did not require supporting documentation unless the affiant has relied upon documents to support his contentions. Boehm also reiterated its position that the competing affidavits created genuine issues of material fact. Boehm further argued that the documentation filed in support of the Rose affidavit was inadmissible hearsay due to a lack of foundation and therefore did not comply with Rule 191's requirement that documents relied upon by an affiant shall be sworn or certified copies of those documents. Finally, Boehm also reiterated its argument that the 48-hour notice was defective in

8

that it referred to "finish plumbing" instead of the electrical work Boehm was contracted to complete.

¶ 21    At the conclusion of the October 8, 2024, hearing on Boehm's motion to reconsider, the trial court noted that Boehm's motion to reconsider improperly raised arguments not previously submitted to the court. The court ruled:

> "Contrary to the argument of Boehm Electrical, it doesn't require me to make any credibility findings. I didn't make any credibility findings. It is undisputed [Boehm] got notices that they were behind. It's undisputed that [Boehm was] given more time than the contract allows. As I said in the written order that doesn't undermine the notice, and there's just no basis in my mind to find a genuine issue of material fact because one typographical error in the notice that says plumbing as opposed to electrical."

The trial court denied Boehm's motion to reconsider. On October 24, 2024, Boehm filed a timely notice of appeal.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, Boehm alleges the trial court erred (1) by granting Edward Rose's motion for summary judgment, (2) by awarding attorney fees to Edward Rose, and (3) by denying its motion to reconsider. Edward Rose contends the court properly found that Boehm failed to establish a genuine issue of material fact and therefore properly granted summary judgment in its favor. Edward Rose further maintains that its fees were reasonable and the award was proper, and that the trial court properly denied Boehm's motion to reconsider.

¶ 24    We first consider whether the trial court's April 30, 2024, order properly granted summary judgment in favor of Edward Rose. Boehm argues the court entered summary judgment despite the record containing genuine issues of material fact that required the court to make a credibility determination. Specifically, Boehm argues the parties' competing affidavits raised the following genuine issues of fact: (1) whether Boehm caused significant delays on the project, (2) whether

9

Edward Rose provided proper notice of its intent to terminate the contracts, and (3) whether Edward Rose properly terminated the contracts.

¶ 25   "Our review of the circuit court's grant of summary judgment is *de novo*." *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31, 36 (2002). "*De novo* consideration means we perform the same analysis that a trial judge would perform." *Flores v. Westmont Engineering Co.*, 2021 IL App (1st) 190379, ¶ 23.

¶ 26   "The purpose of summary judgment is not to try a question of fact, but simply to determine whether a genuine issue of triable fact exists." *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). To determine whether a genuine issue of material fact exists, "a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent." *Id.* "In situations where both parties file cross-motions for summary judgment, 'they agree that no material issue of fact exists and that only a question of law is involved.' [Citation.] Thus, ' "the court is invited to decide the issues presented as a question of law." ' [Citations.]" *State Farm Insurance Co.*, 332 Ill. App. 3d at 36. "However, 'the mere filing of cross-motions for summary judgment does not require that the court grant the requested relief to one of the parties where genuine issues of fact exist precluding summary judgment in favor of either party.' " *Id.*

¶ 27   Motions for summary judgment can be filed with or without supporting affidavits. 735 ILCS 5/2-1005(b) (West 2022). If a supporting affidavit is utilized, the opposite party "may prior to or at the time of the hearing on the motion file counteraffidavits." *Id.* § 2-1005(c). The affidavits must be in compliance as "provided by rule." *Id.* § 2-1005(e). The form and the content of the affidavits are provided in Illinois Supreme Court Rule 191. *Id.* § 2-1005(d); Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). Rule 191(a) provides, in pertinent part, that affidavits

> "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall

10

have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

As noted above, both parties filed affidavits and supporting documentation in support of their respective positions.

¶ 28    Boehm's position is that its affidavits raise facts that are in direct conflict with the Rose affidavit, and these conflicts create a genuine issue of material fact. For example, Boehm notes that while the Rose affidavit states that Boehm failed to provide adequate labor and materials causing significant delays to the project, the Boehm affidavits state that Boehm completed all work in a timely and workmanlike manner. As another example, Boehm points to the differences between the parties' affidavits: the Rose affidavit states that Boehm's performance failures were raised at monthly construction meetings as opposed to the Boehm affidavit which states that Boehm was not informed that its work was behind schedule. Finally, Boehm contends that there is a genuine issue as to whether the 48-hour notice provided Boehm was proper. The basis of this argument is that language in the body of the letter itself refers to "plumbing" work and not to the "electrical" work that Boehm was contracted to complete. According to Boehm, these conflicts indicate genuine issues of material fact that preclude the entry of summary judgment in favor of Edward Rose. We disagree.

¶ 29    In ruling on the cross-motions for summary judgment, the trial court noted the "paucity" of Boehm's briefs in this matter and characterized Boehm's filings as "invitations for the Court to fill in the blanks and do the legal work for Boehm Electrical." The court concluded that "[t]he Boehm affidavits are insufficient to raise a genuine issue of material fact and do nothing more that make bald claims that it did the work." Citing *Farm Credit Bank of St. Louis v. Isringhausen*, 210

11

Ill. App. 3d 724, 727 (1991), the court concluded that it " 'should ignore' such personal conclusions, opinions and self-serving statements." We agree with the trial court's assessment.

¶ 30　　We acknowledge Boehm's argument that more recent caselaw has noted that " 'the term "self[-]serving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.' " *Garton v. Pfeifer*, 2019 IL App (1st) 180872, ¶ 41 (quoting *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013)). At the same time, we also note that Boehm cited *Farm Credit Bank* in the trial court in its "reply in support of motion for summary judgment" when it asked the court to ignore "the self-serving statements, personal conclusions, and opinions contained in Defendant's Response in Opposition to Plaintiff's Motion for Summary [Judgment]." Boehm should hardly be heard to complain about the court using its own arguments against it. Furthermore, considering the trial court's order as a whole, it is apparent that the trial court was concerned with the complete lack of substance found in Boehm's filings against Edward Rose's motion for summary judgment, and again, we agree with the trial court's assessment.

¶ 31　　While Boehm argues that the competing affidavits demonstrate genuine issues of material fact, we disagree. For example, even disregarding the "self-serving" nature of Boehm's assertion that it completed the work in a timely manner, the problem is that Boehm's assertion is merely a conclusion unsupported by the record or documents attached to either affidavit. To the extent that Boehm wants its assertion to be considered a "fact," Boehm's assertion is, at best, an attempt to state a "conclusion of fact." A conclusion of fact is "[a] factual deduction drawn from *observed or proven facts* without resort to rules of law; an evidentiary inference." (Emphasis added.) Black's Law Dictionary (12th ed. 2024). By contrast, the Rose affidavit stated that Boehm had fallen behind schedule and was causing delays to the project, an assertion that was supported by business

records attached to the affidavit. These records include weekly progress schedules indicating the "rough electrical" and "rough TV and phone" was behind schedule, and notes of monthly construction meetings stating the same. The Rose affidavit correctly stated "conclusions of fact" supported by other "observed or proven facts" contained in the supporting attachments.

¶ 32 An affidavit filed in support of a motion for summary judgment, or in opposition thereto, "shall set forth *with particularity* the facts upon which the claim, counterclaim or defense is based" and "*shall not consist of conclusions* but of facts admissible in evidence." (Emphasis added.) Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). Boehm's affidavits and documents neither set forth facts with particularity nor consisted of anything other than conclusions. By contrast, the Rose affidavit and its supporting documentation set forth the facts with particularity and supported its conclusions with provable facts. Specifically, Edward Rose established that Boehm was behind schedule and that the project was being delayed. We further note that paragraph 13 of the contracts in question allow Edward Rose to terminate the contracts, after proper notice, if Edward Rose *was of the opinion* that Boehm "fail[ed] to perform substantially in accordance with this contract, or [was] responsible for substantial delays." Based upon the record before this court, there is no genuine issue as to a material fact as to Edward Rose's opinion on this subject matter.

¶ 33 As noted, Boehm also argues that there is a genuine issue of material fact with regard to whether Edward Rose provided Boehm with proper notice of its intent to terminate the contracts. In support of its argument, Boehm argues that the 48-hour notice did not inform Boehm of the "unsatisfactory matters" that needed to be satisfied. Boehm's argument is based solely upon the fact that the 48-hour notice informed Boehm that it was "required to have Building #17 *finish plumbing* completed in the first three corridors by October 30, 2017 and the second three corridors by November 24, 2017, along with final inspections." (Emphasis added.) Boehm argues that it was

13

not hired to complete any plumbing on the project, and therefore a material fact exists as to whether the 48-hour notice was adequate notice for its termination.

¶ 34    We disagree. Again, contrary to the mandate of Rule 191, Boehm's second affidavit simply states that Boehm "performed all work in compliance with contract and project schedules and in coordination with other mechanical trades" and that Boehm "was not informed that its work was delayed or behind schedule." As before, Boehm's statements are mere conclusions made in the absence of supporting facts. Boehm offered no documentation that it was uncertain as to the terms of the notice, or that it questioned Edward Rose with regard to any perceived confusion with the notice. Further, we note that the letter itself references, at the outset and in all caps, the contracts between the parties including the dates that were both signed. Simply stated, despite Boehm's assertion to the contrary, no genuine issue of material fact exists as to the subject matter of the 48-hour notice, notwithstanding the use of word "plumbing" instead of "electrical."

¶ 35    In the absence of supporting documentation or other facts admissible in evidence, as required by Rule 191, Boehm's affidavits consist of mere conclusions without supporting evidence. The Rose affidavit and its supporting documentation provided uncontradicted facts supporting the conclusion that (1) Boehm fell behind on its work and caused substantial delays to the project, (2) Edward Rose provided Boehm with proper notice of its unsatisfactory performance under the contracts, and (3) Edward Rose properly terminated the contracts. Contrary to Boehm's assertion, the circuit court's ruling did not require the court to make a credibility determination. Boehm had the opportunity to rebut Edward Rose's claims with supporting evidence but failed to do so. Accordingly, we agree with the court's conclusion that "[t]he Boehm affidavits are insufficient to raise a genuine issue of material fact and do nothing more than make bald claims

14

that it did the work." For these reasons, we affirm the court's decision to grant summary judgment in favor of Edward Rose.

¶ 36    We next consider Boehm's request that we reverse the circuit court's order awarding attorney fees of $45,101.25 to Edward Rose, or in the alternative, that we remand for further proceedings. Boehm argues that Edward Rose failed to meet its burden of proving that its fees were reasonable. Specifically, Boehm argues that a number of the "time detail" entries are impermissibly vague under the standard set forth in *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983 (1987), and that the invoices fail to identify the hourly rate charged by each attorney, instead only providing an average hourly rate for all of the invoiced hours. Consequently, Boehm contends that Edward Rose failed to provide any evidence regarding the hourly rate charged by each attorney; the skill or standing of four of the seven attorneys who worked on the file; "or the reasonableness of having seven professionals work on a simple contract/mechanics lien case and the obvious overlap of work that results from having multiple attorneys work on a single matter."

¶ 37    "Generally, a party is responsible for his own attorney fees." *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 281 (2001) (citing *Abdul-Karim v. First Federal Savings & Loan Ass'n of Champaign*, 101 Ill. 2d 400, 412 (1984)). "An exception exists when the contract provides for an award of attorney fees." *Id.* (citing *Mirar Development Inc. v. Kroner*, 308 Ill. App. 3d 483, 488 (1999)). "[O]nly those fees which are reasonable will be allowed [citations], the determination of which is left to the sound discretion of the trial court." *Kaiser*, 164 Ill. App. 3d at 983. The party seeking the fees must present evidence sufficient for the court to determine the reasonableness of the fees. *Id.* "The determination of reasonableness is a matter for the trial court's

15

discretion." *J.B. Esker & Sons, Inc.*, 325 Ill. App. 3d at 283 (citing *Mercado v. Calumet Federal Savings & Loan Ass'n*, 196 Ill. App. 3d 483, 493 (1990)).

¶ 38    "[T]he petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Kaiser*, 164 Ill. App. 3d at 984. "Because of the importance of these factors, it is incumbent upon the petitioner to present detailed records maintained during the course of litigation containing facts and computations upon which the charges are predicated." *Id.* In determining the reasonableness of the requested fees, the trial court should consider other various factors, including: (1) the skill and standing of the attorney, (2) the nature of the case, (3) the novelty of the issues involved, (4) the significance of the case, (5) the degree of responsibility required, (6) the customary charges for comparable services, (7) the benefit to the client, and (8) the reasonable connection between the fees sought and the amount involved in the litigation. *J.B. Esker & Sons, Inc.*, 325 Ill. App. 3d at 283 (citing *Mercado*, 196 Ill. App. 3d at 493). "A trial court's decision whether to award attorney fees is a matter within its discretion and will not be disturbed absent an abuse of that discretion." (Internal quotation marks omitted.) *McNiff v. Mazda Motor of America, Inc.*, 384 Ill. App. 3d 401, 404 (2008).

¶ 39    As noted above, a fee-shifting provision exists in the contracts here. Paragraph 13 of the contracts provide that Edward Rose is entitled to recover "all costs, including, without limitation, attorney fees, administrative expenses and court costs" based on Boehm's breach of the contracts. Edward Rose sought attorney fees of $55,392.50 for work completed during the pendency of the case. Edward Rose supported its claim for fees with an affidavit from its lead attorney, Jad Sheikali. Sheikali's affidavit was in turn supported by invoices, and each invoice was likewise supported by a "time detail" sheet that gave the date of the work, the name of the attorney

16

completing the legal work, the amount of time expended, and a brief description of the work involved.

¶ 40    Regarding Boehm's argument that Edward Rose failed to provide any evidence regarding four of the seven attorneys who worked on the case, we note that those four attorneys all worked on the case *prior to* the April 5, 2022, Rose affidavit. The Rose affidavit mentioned that the company had paid attorney fees in excess of $1,465. In its petition for attorney fees, Edward Rose requested payment of $11,755 in attorney fees for all legal work completed prior to the Rose affidavit. The additional fees of $10,291 were disallowed by the trial court, obviating the need for this court to consider Edward Rose's failure to detail the skill and the standing of the four attorneys who worked on the case prior to the Rose affidavit. The trial court did not abuse its discretion by awarding Edward Rose the $1,465 in attorney fees incurred prior to April 5, 2022.

¶ 41    Three attorneys worked on the Edward Rose file after April 5, 2022. For this work, Edward Rose requested payment of $43,636.25 in attorney fees. The Sheikali affidavit stated that all three of these attorneys were partners in the Honigman LLP law firm, explaining to some extent the skill and the standing of the attorneys employed. Insofar as the hourly rate for each attorney involved during this time frame is concerned, Boehm correctly asserts that Edward Rose failed to specify an hourly rate for each attorney. We acknowledge that it would have been easier for this court if Sheikali had specified the hourly rate for each of the attorneys involved in the case after April 5, 2022. We note, however, that the hourly rate for each attorney can be readily ascertained by looking at the "time detail" documents and applying basic math.

¶ 42    Regarding other factors listed in *J.B. Esker & Sons, Inc.*, Boehm argues that the evidence provided below supports a finding that the attorney fees claimed were unreasonable. Boehm specifically argues that this case was "an uncomplicated contract dispute with a mechanics lien

claim," and that Edward Rose "failed to identify any facet of this case which made it more complex or difficult to litigate." We note that the Sheikali affidavit explained the work completed on the case as invoiced from April 13, 2022, through January 17, 2024, as follows:

> "(i) drafting a response to Boehm's motion for summary judgment; (ii) conducting legal research in support of a response to Boehm's motion for summary judgment; (iii) reviewing and compiling hundreds of documents submitted in support of a response to Boehm's motion for summary judgment; (iv) preparing a detailed affidavit in support of a response to Boehm's motion for summary judgment; (v) drafting a response to Boehm's motion to dismiss Edward Rose's affirmative defenses; (vi) drafting Edward Rose's cross-motion for summary judgment; (vii) drafting a reply in support of Edward Rose's cross-motion for summary judgment; (viii) analyzing Boehm's reply in support of it[s] motion for summary judgment; (ix) conferring with Boehm's counsel regarding then-pending motions and potential resolution of the litigation; and (x) conferences between Edward Rose and its outside counsel at Honigman LLP regarding then-pending motions, legal strategy, and potential resolution of the litigation."

As noted above, Sheikali's affidavit was supported by invoices and "time detail" documents.

¶ 43   Boehm also insists that several of the entries on the "time detail" documents are impermissibly vague and therefore fail to support its claim for fees for those times. We note that of the 14.5 hours' worth of time entries that Boehm claims are vague, 3 hours reflect time that Honigman LLP billed Edward Rose for work done prior to the Rose affidavit. As noted above, the trial court denied the vast majority of Edward Rose's request for attorney fees during that part of the litigation.

¶ 44   In support of its argument that some of the time entries are impermissibly vague, Boehm relies on the *Kaiser* court's statement that "to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client [citation], since this type of data, without more, does not provide the court with sufficient information" as to the reasonableness of the fees. *Kaiser*, 164 Ill. App. 3d at 984. Part of the problem with Boehm's reliance on *Kaiser* is the standard of review. In *Kaiser*, the defendant was appealing the trial court's

18

denial of its request for attorney fees. *Id.* at 983. We note that the *Kaiser* court found that the trial court did not abuse its discretion denying the defendant's request, noting that many of the time entries contained inadequate descriptions, such as "file review," "status," "telephone calls" (some identifying the person called, others not), "conferences" (again, some identifying the conference participants, others not), etc. *Id.* at 986. By contrast, in this case, the trial court necessarily found that the time entries submitted by Edward Rose in support of its request for attorney fees were adequate. Our review of the time entries as a whole supports the conclusion that the trial court did not abuse its discretion in granting the fees requested, notwithstanding that a handful of the entries lack the detail contained in other entries.

¶ 45 Next, Boehm maintains that the attorney fees were unreasonable when measured against the benefits resulting to Edward Rose as a result of the litigation. Boehm argues that the benefits to Edward Rose were limited in that the trial court declined to award Edward Rose expectation damages since its costs in having another electrician finish the work was less than what it would have paid under the contract and that Edward Rose did not demonstrate additional costs due to any delay. Boehm concludes that, "Even though the trial court entered judgment in [Edward Rose]'s favor, the benefits produced by its attorneys was limited because there was no affirmative recovery on the most significant issue of its counterclaim."

¶ 46 We disagree with Boehm's characterization regarding the benefits Edward Rose received from its attorneys. As noted by the trial court in its order granting Edward Rose's motion for summary judgment, "Worse, Boehm Electrical could have been paid in full for its work had it simply provided the contractually obligated lien waivers for the work. Instead it initiated this lawsuit." We note that Boehm filed mechanic's liens against the property. It is clear that this was a multi-million dollar project involving several apartment buildings. It is also clear that Boehm

19

violated the contracts at issue and improperly filed mechanic's liens against the property. While the trial court may not have awarded expectation damages to Edward Rose, it granted Edward Rose the very thing it was requesting from Boehm at the outset: that its property be free and clear of mechanic's liens. For the foregoing reasons, we cannot conclude that the trial court abused its discretion in granting Edward Rose attorney fees in the amount of $45,101.25.

¶ 47    Finally, Boehm contends that the trial court erred in denying its motion to reconsider its decision to grant summary judgment in favor of Edward Rose and granting Edward Rose's petition for attorney fees. Boehm's motion to reconsider and its supporting memorandum echoed its arguments that the competing affidavits in this matter created genuine issues of material fact, and that the trial court "misapplied existing law by deciding genuine issues of material fact on summary judgment and making credibility determinations."

¶ 48    The purpose of a motion to reconsider is to alert the court to newly discovered evidence, changes in the law, or errors in the court's application of previously existing law. *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App (1st) 111296, ¶ 16. Generally, a trial court's decision to grant or deny a motion for reconsideration lies within its discretion and will not be reversed absent an abuse of that discretion. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078 (2007). However, where the motion was based solely on the trial court's application or purported application of existing law, rather than on new facts or legal theories not presented at trial, a court of review will apply a *de novo* standard of review. *Nissan Motor Acceptance Corp.*, 2012 IL App (1st) 111296, ¶ 16.

¶ 49    As discussed above, the trial court did not misapply the law by making a credibility determination. Boehm tries to support its argument to the contrary by noting that the trial court's written order granting Edward Rose's motion for summary judgment cited to the Rose affidavit 15

times. A review of the court order shows that the court was citing to the affidavit and facts found in its supporting documents. As noted, Boehm did not provide any evidence to dispute these facts other than its own conclusory statements, and this was not enough to create genuine issues of material facts. Under a *de novo* review, we find that the trial court did not err in denying Boehm's motion to reconsider.

¶ 50    Boehm also argues, in its reply brief filed with this court, that Exhibits D (weekly progress schedules) and E (monthly construction meeting documents) attached to the Rose affidavit violate Rule 191 in that the documents are not sworn or certified copies of the business records and therefore "lack foundation and are inadmissible hearsay." We note that the first time Boehm complained about Exhibits D and E in the trial court were in its response to Rose's memorandum in opposition to Boehm's motion to reconsider. If Boehm wanted the trial court to consider this argument, it should have raised it earlier in the proceedings. Instead, Boehm waited not only until after it lost Edward Rose's motion for summary judgment or even in its motion to reconsider but waited until it filed a reply to Edward Rose's memorandum in opposition to Boehm's motion to reconsider. This was the first time Boehm advanced this new legal argument. In ruling on Boehm's motion to reconsider, the trial court found it "interesting that *** Boehm Electrical now makes arguments that they didn't make the first time."

¶ 51    A motion for reconsideration "is not the place to raise a new legal theory or factual argument." *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 25. "As a result, legal theories and factual arguments not previously made are subject to waiver." *Id.* Since Boehm was then advancing a new legal theory that would have prevented the court from granting Edward Rose's motion for summary judgment, we review this argument under an abuse of discretion standard. *Nissan Motor Acceptance Corp.*, 2012 IL App (1st) 111296, ¶ 16. We note that the Rose affidavit

21

states that the affiant, Jim Vincent, "could competently testify to the facts stated herein based upon my own personal knowledge and the business records of Edward Rose." The Rose affidavit further asserted that Exhibits D and E were "true and accurate" copies of the weekly progress schedules and the monthly construction meetings, respectively. Under these circumstances, we will not find that the trial court abused its discretion by denying Boehm's motion to reconsider based upon an argument that it did not advance in its opposition to Edward Rose's motion for summary judgment or even in its written motion for reconsideration.

¶ 52    For the foregoing reasons, we conclude that the trial court did not err by granting Edward Rose's motion for summary judgment or in its granting of attorney fees to Edward Rose. Further, the trial court did not err by denying the motion to reconsider.

¶ 53                                    III. CONCLUSION

¶ 54    For these reasons, the judgment of the Champaign County circuit court is affirmed.

¶ 55    Affirmed.